Parsons, C. J.
The proceedings in this case having been certified to us, and having heard, as well the inhabitants of Cambridge, as the applicants for the new road, we are now to decide, whether those proceedings are to be quashed or affirmed.
The counsel for the respondents have taken several exceptions to the legality of the proceedings.
It is objected that the Court proceeded to appoint a viewing com ■ *134 mittee before notice to the inhabitants. A viewing committee is not directed by law ; and it is entirely discretionary with the Court, whether to appoint one or not; and when appointed, they are merely to view the ground, and report their opinion; which report, if objected to, is no evidence in the cause. The cun [ * 159 ] mittee must be examined * on oath as witnesses, if either party request it. This objection, we therefore think, ought not to prevail; although it was further objected that they were not sworn before they viewed; for the view was to enable them to testify before the Court, as intelligent witnesses, on the motion of either party.
But it was further objected, that this committee was expressly appointed to view at the expense of the applicants.
As this expense was to be defrayed by the applicants, whether the report of the committee or their testimony in Court was for or against the petition, this objection does not appear sufficient to quash the proceedings. In the argument it has been supposed that the applicants might make a more liberal allowance to the committee, if the report was in their favor, than if it was against them ; and that the committee, from this consideration, might be under some influence in making their view and report. This we cannot presume, but if the presumption were possible, it might be prudent for the Court expressly to direct, that the expenses of the committee should be allowed and paid by the county ; and to take a stipulation or some security from the petitioners, to reimburse the county this expense.
Another objection is, that the Court of Common Pleas ordered all proceedings to stay until further notice, and that in fact they after-wards proceeded without such further notice.
In looking into the record certified to us, it appears that at December term, 1809, among other respondents, who were admitted to oppose the application, were the proprietors of West Boston bridge, and William Gray, who were heard by their counsel against the application ; and that at that term the Court ordered that the report of the reviewing committee be continued for advisement, and that the petitioners give due notice to the respondents, who have appeared, when and where they shall move for further proceedings. [*160] And it further appears from the same record, *that at the next term the petitioners moved for further proceedings, and the Court thereupon ordered the former respondents, and some others, to be notified to show cause. The proprietors of West Boston bridge, and the said William Gray, were not included in this order, and did not again appear to respond to the petitioners, nor were they parties on the record to any of the further proceedings. This objection is therefore supported by the record.
*135 Against the validity of the objection, the petitioners say, that as the persons thus omitted to be notified do not appear from the petition to be parties in interest, notice to them was unnecessary ; and although they were admitted by the Court to appear against the petition at the December term, yet they were not afterwards notified, because the Court discovered that in fact they had no interest in the question.
Had the Court assigned this reason on the record, we must have considered it as true, and a sufficient cause for no further notice. But this reason is not assigned on the record, and we cannot travel out of it for facts, either to affirm or quash the proceedings. It appears that they claimed to be parties in interest, that they once appeared as such, that their appearance was allowed, and that while they were in Court an order passed, that no further proceedings should be had, unless they were again notified. We must therefore presume prima facie from the record, that they were parties in interest.
But it is urged that, their interest not appearing from the petition, they were not entitled to notice.
As in petitions for county roads it frequently happens, that the owner or occupants of the lands may be unknown to the petitioners, and as the termini of tire way prayed for are expressed generally, without an intention on the part of the petitioners to describe particularly the course of the way, or the land over which it may eventually be located; the Court have decided that, previously to the adjudication, that the way prayed for is of common necessity or convenience, it is not necessary to the legality of the adjudication, *that all persons, who may eventually be [ * 162 ] interested in the location, should be notified; as previously to the location they will be notified, and may be heard as to the course of the way, as to their damages, if it pass over any of their land, and also against the proceedings of the locating committee. If this were not law, it would be impracticable in many parts of the country to lay out a public highway in due and legal form.
But when a petition shall describe the parties in interest, over whose land the way must pass, if the prayer of the petition obtain, it has not been decided that such persons are not to be notified, before an adjudication that the public shall have an easement in their lands without their consent. Common justice requires that they have an opportunity to be heard, before any definitive order pass affecting their rights.
When the owners or occupiers of the land, who are necessarily parties in interest, are not mentioned in the petition, through the ignorance or negligence of the petitioners, no order of notice to *136 them can regularly issue; but if they, in fact, having notice, come into Court, and show their claim of interest against the prayer of the petition, the Court will inquire into their claim, and if it appear to be well founded, will admit them to show cause against the petition ; when they shall be deemed parties in all the subsequent proceedings.
That this was the case of the proprietors of West Boston bridge and of William Gray, we must presume from the record; because they were once heard as parties, and notice was directed to be given them before any further proceedings were to be had ; and no reason is assigned on the record, to control this presumption. And because there were further material proceedings had on the petition, in the adjudication that the way prayed for was of common convenience and necessity, without notice to those proprietors, and to the said Gray, those proceedings were, for this cause, in our opinion, irregular.
[ * 1£>2 ] * Another objection to the proceedings is the want of jurisdiction in the Court of Common Pleas. The road prayed for will lie wholly in the town of Cambridge: this, if is said, is a town way, and cannot be established but by the town, except on application to the Court, if the town shall refuse to establish it. The statute of 1786, c. 67, § 4, authorizes the Court to lay out public highways or county roads from town to town, or from place to place ; and the objection is, that the expression “ from place to place ” must mean from plantation to plantation, or from a place to a place not within a town or district.
This statute is a revision of former statutes on this subject; and particularly of the provincial statute of 30 Geo. 2, c. 3, § 1, where the authority to lay out county roads is expressed in the same language. But it is very clear that neither statute contemplated the establishment of a county road, unless in some town or towns ; because the road when established is to be made and repaired, and the damages sustained by individuals are to be paid by the inhabitants of the town in which the road is located. And the Court was not authorized to establish roads in plantations, until the passing of the subsequent statute of 1796, c. 57. The phrase “ from place to place,” after the phrase “ from town to town,” must therefore obviously include an authority to establish a county road from place to place within a town. And this construction of the statute is reasonable ; for a new county road may be required in some part of a town, where the inhabitants of the town may have no occasion for a town way. (1) This objection is therefore, in our opinion, without an) good foundation.
*137 The last objection made to the proceedings is, that the petition ers prayed for an alteration of an existing county road, and the Court have adjudged a new county road to be of common convenience and necessity.
In looking into the record, we find that the petition states, that the existing road may with greater convenience be turned or al tered in two places, in the direction there described; * and then the prayer is that the alteration may be made [ * 163 ] and established in that direction. The adjudication is, that it is of common convenience and necessity to have one of the alterations made, but that the existing road should not be discontinued
The jurisdiction given to the Court is to lay out new county roads, or to turn or alter old roads, on application made to the Court. This application is usually by petition ; but in whatever form it be made, it must be entered on record, with the names of the applicants ; and is the foundation ot the future proceedings of the court. (3 Mass. Rep. 229, Commonwealth vs. Peters.) And before the Court can proceed to judge upon the application, the town or towns must have reasonable notice to show cause against the petition, if they have cause to show upon the hearing. The issue is the truth or falsehood of the allegations in the petition; and the town can have no motive to appoint agents for any purpose foreign to this issue. If the adjudication be of matters collateral to this issue, and on allegations not made in the petition, the application to the Court is no foundation for this adjudication, neither have the parties had notice, nor have they been heard, as far as the record is our guide, on the matters adjudged.
Thus, if a petition was filed, praying that a county road might be established over white acre, and on this petition notice was given to the town in which white acre lay, it could not be supposed that the Court could regularly adjudge that a county road over black acre in the same town was of common convenience or necessity.
The present petition is for an alteration of an existing highway, and to show cause against this petition the town of Cambridge was notified. It has been decided that an alteration in the course of an existing road is in law a discontinuance of so much of the existing road, as the course of it was altered. (3 Mass. Rep. 406, Commonwealth vs. Inhabitants of Westborough.) It also appears from the record, that the adjudication was, that it was of common convenience *and necessity, that one of the alterations [ * 164 ] prayed for be made ; but that such part of the old road, as lies between the two points, where the alteration begins and ends, should not be discontinued. Hence it is manifest, that what the Court denominate an alteration is in law a new county road *138 And if it be legal for the Court, upon a petition for an alteration, and upon notice to show cause against a.i alteration, to establish a new county road in the place where the road was prayed to be altered, and to leave remaining the whole of the existing road, then this objection must fail.
The counsel for the record have argued, that this petition is for turning or altering an old road, and that an old road may be turned, without implying a discontinuance of any part of the existing road.
It is true that in the recital of the petition it is mentioned, that the old road may be turned or altered, with greater convenience ; but the petitioners considered the words as synonymous, for they pray expressly for an alteration, omitting the word turning. And we are satisfied that the petitioners were correct in not making any such distinction, and that the turning of part of the course of an old road to another direction is in law a discontinuance of that part of the old road, the course of which was turned. As to the reasoning from the widening of an existing road, it does not appear to have any weight; for the widening of a road is not turning or altering any part of it, but extending the public easement to other lands adjoining, by which they also become a part of the highway.
We now recur to the principal question. It seems a well-established rule in all legal proceedings, that the adjudication should be of the matter in dispute. This rule is so reasonable, that it ought to be adhered to; because it cannot be supposed that any matters are litigated, but those which appear upon the record to be in dispute, nor that the parties are heard upon any matters not regularly in litigation. When therefore the adjudication is not of [ * 165 ] the matters in dispute, the record does not furnish any evidence that the parties were heard.
To apply this principle to the case before us. The matter in dispute was, whether an existing road should be partially altered, or not: the adjudication was against the alteration prayed for ; but in favor of a new road, where the alteration was requested ; a new road there not being prayed for. In form, therefore, it appears that the adjudication was not of the matter in dispute. Whether it was or was not substantially, deserves consideration.
So far as an alteration is a charge upon the town, it is reasonable they should prefer the alteration to a new road ; because in this last case the old road remains a subject of repair, while the new road requires also to be made and repaired. But when there is an alteration, the part of the old road that is discontinued ceases to be a charge upon the inhabitants. It may therefore be well supposed that, when an alteration is prayed for, it may not be opposed by a *139 town; but their agents may unite with the petitioners in requesting it; while they would earnestly oppose a new road. With respect to individuals, whose interest may be affected, they may not oppose a new road, because the old road remains for them to pass, while they might resist an alteration, as discontinuing an old road convenient to them.
What were the particular interests or objections of the town of Cambridge, or of individuals, does not appear of record ; nor can we inquire into them; but we are obliged to conclude that the alteration of an old way, and the establishment of a new one, are substantially different, and differently affect the opposing parties. And from this conclusion we are bound to decide that, in the case before us, the adjudication of the Court was not of the matters in dispute before them, but of a point, which does not appear from the record to have been litigated. We therefore think this adjudication was irregular.
After the record and proceedings were certified to us, the in habitants, who moved for the certiorari, suggested * diminution, alleging that one of the petitioners had [*166 j given a bond to the town, to indemnify them against one half of the expenses they might incur in consequence of the granting of the petition, and had filed it in Court as an escrow, to be delivered to the inhabitants of Cambridge; and that the bond was one of the grounds upon which the adjudication by the Court was prayed for.
A certiorari was then ordered to certify the proceedings respect ing this bond. That certiorari has been returned, on which it appears, that such a bond was executed by one of the petitioners, and delivered to the clerk, as an agent of the petitioners, to be by him delivered to the inhabitants of Cambridge, if they would receive the same; that this was done in open Court, without the direction of the Court, and that the bond was not filed as part of the proceedings in this cause.
From the return it is manifest that, if the execution of the bond, and the placing of it with the clerk, had any indirect influence on the opinion of the court below, it can have no influence upon our decision, as it is no part of the record and proceedings in this cause. Probably the transaction was had with the intention, on the part of the petitioners, that it might operate as evidence to the court, that the damages, which the town might suffer if the petitioners prevailed, would be reduced one moiety ; so that the magnitude of these damages might not operate on the minds of the judges.
Although we do not impute any intentional misconduct to the petitioners, yet we are obliged to declare a practice of this kind :rregular; and if it be usual, as has been suggested, we trust it will *140 no longer be continued. Evidence to show that the damages will not be greater on the one side, than the public convenience on the other, cannot be objected to. But evidence that an individual, for his own private advantage, will defray a part of the damage actually incurred, and which he is not obliged by law to defray, is very improper.
[ * 167 ] * The way prayed for ought to be of common con venience and necessity. By necessity is not to be understood absolute physical necessity; but so great a public benefit, that the want of the way is a great public inconvenience. Now the town, who have to pay the damages, form a part of the public; and it is but reasonable for the Court to coznpare the extent of the damages to be incurred with the advantage to be received. And certainly although there may be a public advantage, yet it may be vei-y small, and no equivalent for the damages, with which it is purchased.
We further observe that every individual is injured, if his land is encumbered with an easement against his consent, which is not required by the public necessity or convenience ; although he may zeceive a fairly-estimated compensation. But if one or more persons may take upon theznselves the payment of this compensation, to obtain a way for their own emolument, the owner of the land is made to submit to an encumbrance, not for the sake of the public, but for the sake of private persons or corpozations, who invade his rights for their own benefit, but in the name of the public.
These observations are intended to apply to cases where private persons or corporations prevail on towns to lay out town ways, colonibly for the use of the inhabitants, but really for their own benefit, over lands of others who are opposed to the way. In this last case a jui-y may discontinue a way thus irregularly obtained; and they ought to do it, whenever they ai'e satisfied that private emolument, and not the interest of the inhabitants, has caused the way to be located, (a)
But we wish it to be remembered, that we impute no irregularity to the declaration of any owner of land, over which the way is prayed for, that his private benefit from the way is equal to any damage he may sustain; and that therefore he will claim no damages. Nor do we extend these remarks to a bona fide charitable donation to a town or plantation, to relieve it under burdens necessarily imposed for the public benefit.
*141 * Upon the whole, it is our opinion that the court [*168 J below acted irregularly in not causing the proprietors of West Boston bridge and William Gray to be notified before further proceedings were had, contrary to their own order, no reason being assigned for rescinding that order. And because the court adjudged a new highway to be of common convenience and necessity, when no new highway was prayed for. For these causes the proceedings must be quashed.

 Vide Craigie vs. Mellen & Al., 6 Mass. Rep. 7

 [And see Commonwealth vs. Sawin, 2 Pick. 547. But see Parks vs. Boston 8 Pick 218.—Jones vs. Andover, 9 Pick. 146. — Freetown vs. Bristol Co Comm. 9 Pick. 46. — Ed.]