# Staunton.

## SCHOOL BOARD OF ROANOKE CITY v. W. BRUCE BUFORD, ET ALS.

### September 18, 1924.

1. EMINENT DOMAIN—*Statutory Right.*—The right of eminent domain must be exercised upon such terms and in such manner, and for such public uses as the legislature may direct.

2. EMINENT DOMAIN—*Fee Simple—Rights of Former Owners—Reverter.*— The general rule is that when land has been acquired for public use in fee simple by the exercise of the power of eminent domain, the former owners retain no rights in the land. But in Virginia it has been expressly provided by section 4379 of the Code of 1919 that when any "company" such as referred to in section 4362 of the Code of 1919 has acquired land by condemnation, it may afterwards change its location from time to time as often as it may see cause. But whenever a change of location is thus made pursuant to this section, the title to the lands, or the interest or the estate therein, condemned for the former location, shall, notwithstanding the previous acquirement of a fee simple title in the location abandoned, revert to the original owner, his heirs or assigns.

3. EMINENT DOMAIN—*Condemnation by School Board—Proceedings—Section 4385 of the Code of 1919.*—Section 4385 of the Code of 1919, as to the acquisition of property by condemnation by a school board, provides that "the proceedings in all such cases shall be according to the provisions of" chapter 176 of the Code of 1919.

   *Held:* That this means that the manner of proceedings by a school board, in acquiring property by condemnation, must be in strict conformity to the provisions of chapter 176, as they are applicable to private companies, but does not extend the reverter clause (§4379) to school boards.

4. EMINENT DOMAIN—*School Board—Reverter.*—Section 4379 of the Code of 1919, providing for the reverter of property taken under eminent domain proceedings upon the abandonment of the use, applies only to private corporations and not to a school board, and property taken by a school board does not revert to the origimial owners when not used for school purposes.

5. EMINENT DOMAIN—*School Board—Province of Courts.*—To permit a school board to acquire property for one purpose and to devote it to a

different purpose, may work a hardship, but is a matter exclusively for the legislature. The province of the courts is to construe the law, not to enact it. To extend section 4379 of the Code of 1919 so as to include within its provisions school boards would be an invasion of the legislative domain.

Appeal from a decree of the Circuit Court of the city of Roanoke. Decree for complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*Jackson & Henson,* for the appellant.

*Woods, Chitwood, Coxe & Rogers,* and *W. Bruce Buford,* for the appellees.

CAMPBELL, J., delivered the opinion of the court.

This is an appeal from a final decree entered by the Corporation Court for the city of Roanoke, and the cause, as shown by the bill of complaint of the appellees, the demurrer interposed to said bill, and the answer filed thereto by appellant, is as follows:

*Bill.*

"Your complainants, W. Bruce Buford, Mrs. M. J. Buford, Mrs. R. L. Hurt, Grace Buford and Ernestine Buford, would respectfully represent unto your honor as follows:

"That T. P. Buford was seized, during his life time, of a certain parcel of land, lying in the city of Roanoke, Virginia, more fully described as follows:

"Beginning at the northeast corner of Roanoke or Third street and Luck avenue, S. W., in the city of

Roanoke, Virginia; thence with the east side of Roanoke or Third street, north 8 degrees 45 minutes 00 seconds, west 75 feet to a point; thence N. 81 degrees 15 minutes 00 seconds, east 59.16 feet to a point; thence south 8 degrees 45 minutes 00 seconds, east 73 feet to the north boundary line of Luck avenue; thence with said line south 81 degrees, 15 minutes 00 seconds, west 59.16 feet to the point of beginning, the area of which is 0.099 acres, more or less, the same being the residue of what is known as Lot No. 19, of the Rorer Grove Map, platted by Chas. Day, the county surveyor.

"That the said T. P. Buford always refused to sell said land, but retained the same as an investment and source of income for himself and family.

"That the said T. P. Buford departed this life in the year 1915 intestate, and leaving surviving him, his widow, who is your complainant, Mrs. M. J. Buford, and also his children and heirs at law, the said W. Bruce Buford, Mrs. R. L. Hurt, Grace Buford and Ernestine Buford. And the said T. P. Buford, at the time of his death aforesaid, was seized and possessed of the real estate above described, and, therefore, upon his death your complainants, W. Bruce Buford, Mrs. R. L. Hurt, Grace Buford and Ernestine Buford, became seized and possessed of the said real estate as heirs at law of the said T. P. Buford, subject to the dower interest of your complainant, Mrs. M. J. Buford.

"That your complainants continued to hold the said real estate, well knowing the value of the same and wishing to retain it as a source of future income, and had, therefore, denied themselves in order to hold said property.

"That about the year 1919 the school board of the city of Roanoke desired a location for a high school,

which it was proposed to erect. And certain other property owners in the block, in which your complainants' property is situated, and which is bounded by Church and Luck avenues and Second (formerly Commerce) and Third (formerly Roanoke) streets, began negotiations with the school board and worked up a sale of their properties to the school board. Your complainants took no part whatever in said negotiations. For, as stated above, they did not desire to sell their property, above described, preferring to hold the same as a source of income in view of the fact that it was within the business district of the city. As above set out, all of the other owners of property in the block made sales of their property to the said school board, giving their voluntary deeds therefor. As your complainants did not desire to sell their property, as aforesaid, but preferred to hold the same as a source of necessary income, the said school board did, on the_____ of _____1920, institute condemnation proceedings in this honorable court for the purpose of acquiring title to your complainants' property above described.

"And the said school board, through such condemnation proceedings, took the said property from your complainants against their will, depriving them of the use and ownership thereof.

"Your complainants would further represent unto your honor that it was for the purpose of the high school building, and for that alone, that the said school board filed its petition, asking leave of this honorable court to take your complainants' property. In fact, the said school board, in the very petition itself (a copy of which is filed herewith marked 'Exhibit A'), gives that as the ground for asking leave of this honorable court to take your complainants' prop-

erty. Said petition, filed by the school board, sets out the need for a new high school building, and the said board thus states its case to the court:

" 'The present high school building in the city of Roanoke is old, insufficient and inadequate for the needs of the city, and in the near future the board contemplates the construction of a new and up-to-date high school building.'

"And again, in the order entered by this honorable court (a copy of which is filed herewith marked 'Exhibit B'), appointing the commissioners in the condemnation proceedings, the following language is used by the court:

" 'And it appearing to the court that the case is one in which the applicant has a lawful right to take said property described in said petition and notice, for the purposes set out in said petition, and that said land so proposed to be taken is necessary for the purposes aforesaid, and will be used therefor,' etc.

"Your complainants, therefore, allege that the only occasion for the taking of your complainants' property by the said school board, through such condemnation proceedings, was the need of a new high school building; and it is further clear from the order of this honorable court, above quoted, that leave was granted to the said school board to condemn your complainants' property only upon the condition that said property was 'necessary' for the construction of the new high school, and that your complainants' property would be 'used therefor.'

"After the said condemnation proceedings were had, and your complainants' property taken, as aforesaid, the said school board abandoned this property so taken from your complainants as the site for the proposed high school, and took options upon certain

property lying on west Campbell avenue, and a bond election was held for the purpose of ascertaining whether sufficient money could in that way be raised to purchase the new location upon Campbell avenue for the high school. And as an inducement to secure the votes of the freeholders in favor of the bond issue, the chairman of the said school board publicly stated, in the press of the city, that the block, including the property taken from your complainants, could be sold, stating that they believed they could obtain the price of $400,000.00, or about that price, for said block.

"The result of the said bond election was in favor of issuing the proposed bonds, and the school board immediately thereupon purchased the other property located, as aforesaid, on west Campbell avenue, and changed the location of the proposed high school. And the said high school building is, in fact, now being erected by the said school board upon the Campbell avenue site, and not upon the property taken from your complainants. And your complainants are further reliably informed and believe and charge that the said school board has entered into negotiations with one or more private persons, looking to a sale—and that at a considerable profit—of the property acquired by the said school board in the said block, including the property so taken from your complainants.

"Your complainants are advised, and therefore charge, that the rights of private ownership of property is so sacred in the eyes of the law that the taking of private property, against the will of the owner, is considered a very unusual and drastic one, and such taking of private property against the owner's will is allowed only in rare cases and only for public use. And, moreover, when private property is taken under such circumstances as attended the taking of your

complainants' property by the said school board, then
the property must be put to the use for which it was
taken. And complainants are further advised, and
therefore charge, that when private property so taken
is not used for the purpose for which it was taken, then
the title to the property reverts to the original owner.
Therefore, your complainants are advised, and so
charge, that by reason of the said change made by the
school board in the location of the said high school
building, the title to the property taken by the said
school board from your complainants now reverts to
your complainants, and that a court of equity will
quiet the title to said property and will confirm the
title thereto in your complainants.

"In consideration whereof, and for as much as your
complainants are remediless in the premises save in a
court of equity, your complainants pray that the
school board of the city of Roanoke, Virginia, may be
made a party defendant to this bill, and required to
answer the same, but not on oath, the oath being
hereby waived, that the court will quiet the title to the
said property described in this bill and confirm the
title to said property in your complainants, and for
such other and further relief in the premises as their
case may require or to equity shall seem meet."

### Defendant's Demurrer.

"For demurrer to said bill, defendant says that the
same is not sufficient in law to entitle the complainants
to the relief prayed for or to any relief, and assigns the
following grounds of demurrer:

"1. The bill and exhibits filed therewith show that
the fee simple in the property in question was con-

demned by the school board in proceedings regularly instituted and prosecuted for that purpose, and the fact that it is stated in the condemnation proceedings that the land was condemned for a high school and other school purposes did not in any way limit the estate or title acquired by the school board in that proceeding or create a condition subsequent."

By decree entered on the 19th day of September, 1923, the court overruled the demurrer of appellant and thereupon the appellant filed its answer to the bill of complaint and the cause came on to be heard upon the bill and answer, without replication thereto, and on the same day a decree was entered by the court adhering to the view expressed in writing in its decision upon the demurrer, and the prayer for relief contained in the bill was granted, and it was further decreed that appellants be divested of all claim to said property and be required to surrender the possession of same to appellees immediately.

As exactly the same question is presented by the demurrer as is involved in the decision upon the bill and answer, we will treat the two questions as one.

It is conceded that the source of appellant's power to condemn, and the terms upon which this power is exercised are purely statutory—that whatever rights are acquired and whatever burdens are assumed are confined to the statutory limits as found in chapter 176 of the Code of 1919.

The decisions of other States, therefore, are of little value as an aid to the correct construction of the statutes hereinafter under review.

[1] As said in *Roanoke v. Berkowitz,* 80 Va. 616: "However the law may be elsewhere, it is well settled in Virginia that the right of eminent domain must be

exercised upon such terms and in such manner, and for such public uses, as the legislature may direct."

The statutory provisions embraced in chapter 176 of the Code, relating to the power of eminent domain and prescribing the conditions upon which it is exercised, are as follows:

Section 4385 provides, among other things: (1) "If * * the trustees of any school district * * cannot agree on terms of purchase with those entitled to any lands, buildings, structures, * * necessary to be taken and used for the purpose of * * school district * * it may acquire title to land * * by condemnation under the provisions of this chapter, and the proceedings in all such cases shall be according to the provisions of this chapter, so far as they can be applied to same."

Sections 4360 and 4388 of the Code provide for the exercise of the power of eminent domain and the procedure which shall be followed in the condemnation of land.

Sections 4369 and 4373 of the Code provide that the title acquired by the condemnor shall be the fee simple title to the land condemned, except in certain instances.

Section 4379 of the Code is as follows: "Notwithstanding any such company may have made a location of land for its purposes, and proceeded to ascertain the compensation therefor, or may have completed its works thereon, and operated the same; such company may afterwards change its location from time to time as often as it may see cause; and proceeding may be had to ascertain what will be a just compensation for the lands, or for the interest or estate proposed to be taken in the lands and the damages to the adjacent and other property of other persons upon any such new location, and the work may be constructed upon or

through the same, and the title to such lands, or to such interest or estate therein, obtained in like manner as if it were the first location.  But whenever a change shall be made the title to lands, or to the interest or estate therein, condemned for the former location, shall revert to the original owner, his heirs or assigns."

[2] The general rule is that when land has been acquired for public use in fee simple by the exercise of the power of eminent domain, the former owners retain no rights in the land.  This general rule has been modified or changed completely in many jurisdictions by statute.

In Virginia it has been expressly provided, by section 4379 of the Code of 1919, that when any company such as is referred to in section 4362 of the Code has acquired land by condemnation, it may afterwards change its location from time to time as often as it may see cause.  But whenever a change of location is thus made pursuant to this section, the title to the lands, or the interest or the estate therein, condemned for the former location, shall, notwithstanding the previous acquirement of a fee simple title in the location abandoned, revert to the original owner, his heirs or assigns.

It is by virtue of the reverter clause of this statute that appellees contend they are entitled to the land taken from them by the condemnation proceeding.  In other words, appellees contend that appellant having acquired title to the land in question pursuant to the provisions of section 4385, which authorizes it to condemn "under the provisions of chapter 176 of the Code and that section 4379 being one of the provisions of chapter 176, it follows that if the appellant has abandoned or changed its location, then there has been a reversion of the land.

Is this position tenable? We do not think it is. While it is true, as contended by the learned counsel for the appellees, that every condemnor acquires title under the provisions of chapter 176 of the Code, it is equally true, that having once acquired title, the condemnor can only lose the same by way of reverter, not under the general provisions of chapter 176, but under the specific provisions of section 4379.

In *Burger* v. *State Female Normal School,* 114 Va. 491, 77 S. E. 489, this court, speaking of section 4385, said: "But it is contended that the whole of this clause is qualified and limited by its closing sentence, which says that the property needed may be acquired by the institutions embraced within the clause, by condemnation under the provisions of this act, and the proceedings in all such cases shall be according to the provisions of this act so far as they can be applied to the same.

It is plain that the concluding sentence thus quoted has reference to the mode prescribed by the entire chapter for giving effect to the right which it confers * *. The limitation refers plainly to the procedure by which the rights are to be enforced; and *procedure* is defined to be the steps taken in an action or other legal proceeding; and *proceeding* is defined by Blackstone to be the course of procedure in the prosecution of an action at law."

[3, 4] In our opinion what is meant by the language employed in section 4385, "and the proceedings in all such cases shall be according to the provisions of this chapter, so far as they can be applied to the same," is that the manner of proceeding employed by one of the agencies named therein, to-wit, a school board, in acquiring property by condemnation must be in strict conformity to the provisions of chapter 176, as they

are applicable to private companies. That is to say, the school board must file its petition containing the necessary averments, in the proper court, ask for the appointment of commissioners, give notice to the land-owner, and that the order and manner of trial and all other matters of method or machinery provided by chapter 176 must be followed in order to vest title to the property desired in the school board.

We are further of the opinion that section 4379, by fair construction, applied only to private corporations, and not to a school board, and that the reverter clause therein is applicable only to private companies.

If the legislature had intended that school boards could only acquire title in subordination to the exception contained in that section, it would have said so in no uncertain terms. This could easily have been done by adding to the words "such company" in section 4379, the words, "or any State institution or school board," etc., or the legislature might have accomplished the same purpose by providing, as is done in section 4385, with reference to the State Highway Commission or board of supervisors of any county, that wherever the word "company" is used in the chapter it shall be construed to mean State institutions, city and county school boards, etc.

The very fact that the legislature, in section 4385, enacted that the word "company" should be construed to mean and embrace "State Highway Commission," or "board of supervisors," demonstrates very clearly to our mind that the legislature intended school boards to stand on a different plane from private corporations, State Highway Commission and boards of supervisors.

Furthermore, if the legislature meant to provide for a reversion of the land acquired by a school board, in

fee simple, by condemnation, why did it enact section ·649 of the Code?

This section provides, among other things, that any ·county, district or city school board may file its petition in court, asking leave to *sell* or *exchange any* public ·school property which in its judgment it is desirable to sell or·exchange, etc. "Any public school property" :means whether acquired by purchase or by condemnation. To conclude that this statute means that the :school board could sell or exchange property which it has lost by reversion would be farcical.

[5] That the appellant acquired the fee simple title to the property in controversy according to the law ·of· the Commonwealth is beyond dispute. That it intends to abandon it—which is denied in the answer—is no concern at this time of this court. That to permit .a school board to acquire property for one purpose and to devote it to a different purpose, may work a hard-:ship, but is a matter exclusively for the legislature.

The province of the courts is to construe the law, not ·to enact it. To extend section 4379 so as to include ·within its provisions school boards, would be reading into the section something not intended to be there, :and would be an invasion of the legislative domain for the arbitrary purpose of enacting judicial legislation.

As said by Judge Christian, in *Ratcliffe* v. *Anderson,* :31 Gratt. (72 Va.) 107, 31 Am. Rep. 716: "It is now ·too well settled to admit of serious dispute .that the legislative department can no more exercise judicial ·power than that the judicial department can exercise legislative power. Each department is supreme in the ·exercise of its own proper functions within the limits ·of its authority. The boundary line of these powers :is plainly defined in every well ordered government. ⁎  *  *  That system which best preserves the in-

dependence of each department approaches nearest to the perfection of civil government and the security of civil liberty."

For the foregoing reasons we are of the opinion that the trial court erred in overruling the demurrer of the appellant and in entering the decree in favor of the appellees, and instead of remanding the cause, this court, pursuant to section 6365 of the Code, will enter a decree sustaining the demurrer of appellant and will annul and set aside the decree of the trial court and enter a decree for the appellant.

*Reversed.*