# Richmond.

## L. P. MATTHEWS v. B. N. CODD AND HARRY L. CARPEL.

### March 22, 1928.

#### Absent, Burks, J.

1. EMINENT DOMAIN—*Title Acquired by Condemner—Marketable Title—Change of Location—Section 1079 of the Code of 1887, Section 4369 of the Code of 1924.*—Section 1079 of the Code of 1887, section 4369 of the Code of 1924, provides that the title to land upon payment of just compensation in condemnation proceedings "shall be absolutely vested in the company, county, city, town, institution, or asylum, in fee simple," etc. Section 1089 of the Code of 1887, section 4379 of the Code of 1924, provides that upon a change of location, the title to lands condemned for the former location shall revert to the original owner, his heirs, etc.

   *Held:* That condemning railroad companies acquires absolute fee simple titles to the rights of way condemed, which can be defeated only by a change of location. Until such change is made, the condemning company, and its successors, are vested with a good marketable title to the property and can convey an unqualified fee simple title.

2. EMINENT DOMAIN—*Reverter to Original Landowner—Change of Location—Courts of Equity look with Disfavor upon Forfeitures.*—Courts of equity look with disfavor upon forfeitures and will not hold, in cases arising under section 1089 of the Code of 1887, section 4379 of the Code of 1924, providing that when a "change of location shall be made, the title to the lands condemned for the former location shall revert to the original owner," that the title has reverted to the original owners, their heirs or assigns, unless it clearly appears that there has been a change of location within the meaning of the statute.

3. EMINENT DOMAIN—*Reverter to Original Landowner—Change of Location—Section 1089 of the Code of 1887, Section 4379 of the Code of 1924—Case at Bar.*—Section 1089 of the Code of 1887, section 4379 of the Code of 1924, providing that upon the change of location the title to land condemned for the former location shall revert to the original holder, contemplates that there must be a removal from the old to the new location; and provides for the ascertainment of just compensation

for the lands taken for the new location. Where, as in the instant case, the company has secured no new location but simply dispensed with one of the tracks on the old location, it cannot be said that there has been a change of location, and the reverter clause of the statute has no application.

4. SPECIFIC PERFORMANCE—*Description of the Property—Definiteness and Certainty—Agreed Statement of Facts.*—In the instant case, a suit for specific performance by a vendor against the vendees of land, defendants contended that they should not be made to specifically perform their contract of purchase for the reason that the description of the property as set forth therein was too vague and indefinite. But if the contract was too indefinite, that defect was cured by the defendants failing to object to the sufficiency of the contract and submitting the case to the lower court upon an agreed statement of facts in which the land was accurately and sufficiently identified.

5. RAILROADS—*Right of Way—Condemnation of Land—Reverter of Land to Original Holders on Abandonment by Railroad—Case at Bar.*—The instant case was a suit by a vendor of land against the vendees for specific performance and to enjoin the vendees from proceeding in their action at law to recover the cash payment on the purchase price of the land, defendants alleged that complainant was unable to convey a marketable title. The major question at issue was whether the title acquired by complainant's predecessors in title, railroad companies, by condemnation had reverted to the original owners of the land. The railroad had secured no new location but simply dispensed with one of the tracks on the old location.

*Held:* That there was no change of location within the meaning of section 1089 of the Code of 1887, section 4379 of the Code of 1924, and that complainant was in a position to convey to defendants a fee simple, non-defeasible and marketable title to the land in question, and that he was entitled to have the defendants specifically perform their contract.

Appeal from a decree of the Court of Law and Chancery of the city of Norfolk.   Decree for defendants. Complainant appeals.

*Reversed.*

The opinion states the case.

*Williams, Loyall & Tunstall,* for the appellant.

*Henry Legum* and *Herman A. Sacks,* for the appellees.

WEST, J., delivered the opinion of the court.

On March 22, 1926, B. N. Codd and Harry L. Carpel, hereafter called defendants, entered into a written contract with L. P. Matthews, hereafter called plaintiff, to purchase a certain parcel of land in the town of Virginia Beach, Virginia, at the sum of $9,000.-00. Defendants paid $1,240.00 on the purchase price, and plaintiff offered to deliver a deed upon defendants' full compliance with their contract. Defendants then informed plaintiff that they would not comply with the terms of the contract because the plaintiff was not in a position to convey to them a marketable title, for the reason that the title, which was acquired by the Norfolk Southern Railroad Company, or its predecessors in title, in a condemnation proceeding, would revert to the original owners, or their heirs, or assigns.

In June, 1926, defendants brought action by notice of motion against the plaintiff to recover the $1,250.00 with interest. Plaintiff thereupon filed the bill against the defendants in the instant case, praying that they be enjoined from proceeding further in the suit at law, and be required to specifically perform their written contract of purchase.

By consent, both cases were heard together, and the court enjoined and restrained defendants from prosecuting the action at law, refused to compel specific performance of the contract, and decreed that the defendants recover of the plaintiff the $1,250.00 with interest and costs. From that decree this appeal was allowed.

It appears from the agreed statement of facts that the property mentioned in the written contract is improperly described therein, and that the property intended to be conveyed under its terms consists of the

"eastern twenty feet of lot thirty-nine (39) running south between parallel lines one hundred (100) feet, and being the northern one hundred (100) feet of said lot, and the northern fifty (50) feet by one hundred (100) feet of lot number thirty-eight (38);" that lot number thirty-eight was acquired by Transit Company, Incorporated, for railroad purposes, in a condemnation proceeding instituted in 1902; that Norfolk and Southern Railroad Company secured title to lot number 39, for railroad purposes, in a condemnation proceeding instituted July 1, 1901; that the Norfolk and Southern Railroad Company subsequently, on November 21, 1904, succeeded the Transit Company, Incorporated, and acquired title to all of its property, including lot number 38.

It is not controverted that the right of way of the Transit Company and the right of way of the Norfolk and Southern Railroad Company were each fifty feet wide and were situate parallel with and contiguous to each other; nor that the railroad company unintentionally located its rail lines on lots 40 and 41, in the same block, instead of on lots 38 and 39 which had been condemned for that purpose.

It further appears from the statement of facts that lots 38 and 39 are not being used for railroad purposes; that the Transit Company used the same lot, which it first used for railroad purposes, up to the time the Norfolk and Southern Railroad Company took it over; that upon the merger of the two companies the Norfolk and Southern Railroad Company removed the tracks of that company and has since used the tracks of the Transit Company; that in 1908, receivership proceedings were instituted in the United States District Court against the Norfolk and Southern Railroad Company, and in 1910 the Norfolk Southern Railroad Company

purchased all the property and franchises of the Norfolk and Southern Railroad Company; that on March 21, 1923, Norfolk Southern Railroad Company conveyed to John D. Gordon and Charles G. Hume lots numbered 38 and 39, and in consideration thereof the said Gordon and Hume conveyed to the Norfolk Southern Railroad Company lots numbered 40, 41, 42 and 43 in the same block.

L. P. Matthews acquired his title to the lands involved here by deed from John D. Gordon and wife and Charles G. Hume, bearing date April 27, 1926.

The major question to be decided is: Has the title which the Transit Company, Incorporated, acquired to lot number 39, by condemnation, and which the Norfolk and Southern Railroad Company acquired, by condemnation, to lot number 38, reverted to the original owners, their heirs or assigns? The answer to this question involves the construction of sections 1079 and 1089 of the Code of 1887, under which the condemnation proceedings were conducted.

[1] Section 1079 of the Code of 1887 (now section 4369 of the Code of 1924), provides: "The sum so ascertained to be a just compensation may be paid to the persons entitled thereto, or into court. Upon such payment, the title to that part of the land for which such compensation is allowed shall be absolutely vested in the company, county, city, town, institution, or asylum, in fee simple, except in the case of a turnpike company, where a sufficient right of way only for the purposes of such company shall be vested."

Section 1089 of the Code of 1887 (now section 4379 of the Code of 1924), provides: "Notwithstanding a company may have made a location of lands for its purposes, * * * the company may afterwards change its location from time to time, as often as it

'may see cause; and proceedings may be had to ascertain what will be a just compensation for the lands upon any such new location   *   *   *.   But whenever such change of location shall be made, the title to the lands condemned for the former location shall revert to the original owner, his heirs, or assigns."

Under the plain and unambiguous language used in section 1079, it is certain that the condemning companies acquired absolute fee simple titles to the rights of way in question, which could be defeated only by the action of the company, or its successors, in changing its location.   Until such change of location is made, the condemning company, and its successors, are vested with a good marketable title to the property and can convey an unqualified fee simple title thereto, which will be unaffected by any *subsequent* change of location.

[2, 3] Courts of equity look with disfavor upon forfeitures and will not hold, in cases like the one now under consideration, that the title has reverted to the original owners, their heirs or assigns, unless it clearly appears that there has been a change of location within the meaning of the statute.   The statute contemplates that there must be a renewal from the old to the new location; and provides for the ascertainment of just compensation for the lands taken for the new location.   Where, as in the instant case, the company has secured no new location but simply dispensed with one of the tracks on the old location, it cannot be said that there has been a change of location, and the reverter clause of the statute has no application.

In *Blondell* v. *Gunter*, 118 Va. 11, 86 S. E. 897, which involved the construction of the same statutes, Keith, P., at page 14 (86 S. E. 898), disapproves the contention of counsel that the company acquired only a conditional or limited fee, and that as soon as the rail-

road company abandoned or ceased to use any part of the lands for the purposes for which it was authorized to condemn them, the title reverted by operation of law to the original owner, or his heirs, or assigns, and says: "There seems to be no room for the suggestion that a base or qualified fee was intended. The meaning of the legislature is emphasized by section 1089, which provides that the lands condemned shall revert to the original owner whenever there is such a change of location as is contemplated by that section. We have then the rule stated in clear and explicit language that the interest condemned shall be a fee simple, * * * and we have the solitary instance of a reverter to the original owner given whenever a change of location shall be made." See also *School Board* v. *Buford,* 140 Va. 173, 124 S. E. 286, and *C. & O. Canal Co.* v. *Great Falls,* 143 Va. 967, 129 S. E. 731.

In *Southern Railway Co.* v. *Commonwealth,* 128 Va., at page 191, 105 S. E. 70, the court, considering the same statute, as amended, says: "The changes of location authorized by this section are plainly removals of a road from one right of way to another, and not elevations or depressions of the level of the tracks, and it is to changes of this character that the words, "change of location of the line of any railroad refer."

[4] Defendants contend that they should not be made to specifically perform their contract of purchase for the reason that the description of the property as set forth therein is too vague and indefinite.

The answer is that if the description of the land in the contract is too indefinite, that defect has been cured by the defendants failing to object to the sufficiency of the contract and submitting the case to the lower court upon an agreed statement of facts in which the land is accurately and sufficiently identified.

*Eaves* v. *Vial*, 98 Va. 134, 140, 34 S. E. 978; *May* v. *Sloan*, 101 U. S. 231, 25 L. Ed. 797; 2 Reed on Statute of Frauds, sections 516, 521; *Miller* v. *Harper*, 63 Mo. App. 293.

[5] For the reasons stated, we are of the opinion that there has been no change of location within the meaning of section 1089; that the plaintiff was in a position, ready and willing, on or before May 5, 1926, to convey to the defendants a fee simple, non-defeasible and marketable title to the land in question, and that he is now entitled to have the defendants specifically perform their contract.

A decree will be entered here reversing the decree complained of and requiring the defendants to specifically perform their contract of March 22, 1926.

*Reversed.*