# WEBER COUNTY et al v. RITCHIE et ux.

No. 6018.   Decided Dec. 28, 1939.   (96 P. 2d 744.)

Rehearing Denied, March 6, 1940.

*David J. Wilson,* of Ogden, for appellants.

*John A. Hendricks,* of Ogden, for respondents.

PRATT, Justice.

Weber County condemned land belonging to Lawrence Ritchie and his wife, Mary. The Ritchies have taken this appeal.

A public highway known as 12th Street, in Weber County, runs east and west past the south boundary of the Ritchie property. About 400 feet west of their land this street is intersected by a public highway known as Route 103, running north and south. Some 200 feet south of this intersection, Route 103 crosses the main line tracks of the Southern Pacific Railroad, which tracks run east and west. This railroad crossing was dangerous. Upon petition of the residents of the locality, the State Road Commission constructed a viaduct on Route 103 over the tracks. Such construction necessarily interfered with the use of 12th Street. As a result, the Weber County Commission decided first to change 12th Street and run it north and around the viaduct. Subsequently, they abandoned this idea and decided to build the east part of 12th Street into a ramp up onto that structure. It was in the construction of this ramp that part of the Ritchie land was taken. The ramp, however, does not extend over and down on the west side. Thus traffic must detour along the viaduct and Route 103 to roads paralleling 12 Street in order to get from the east part of the latter street

to its west part. Before the viaduct was built, traffic could pass along 12th Street without any interference.

Section 19-5-38, R. S. Utah 1933, pertaining to the powers and duties of County Commissioners, reads as follows:

"They may contract for, purchase or otherwise acquire when necessary rights of way for public roads over private property, and may institute proceedings for acquiring such rights of way as provided by law, may lay out, construct, maintain, control and manage public roads, sidewalks, ferries and bridges within the county, outside of incorporated cities, may designate the public roads to be maintained by the county within or extending through any incorporated city or town, which in no case shall be more than three in the same direction, and may abolish or abandon such public roads as are unnecessary for the use of the public; *provided, that the board shall not change or alter the location of any public highway or sidewalk that has had public money expended upon it, unless a petition signed by a majority of the freeholders of the precinct wherein such change is proposed asks for such change * * *.*" (Italics ours.)

Upon the trial, Weber County did not introduce any petition such as is required by the italicized part of the above section. This forms the basis of one of appellant's alleged errors assigned. They also rely upon certain errors alleged to have occurred in the admission and rejection of evidence.

If the building of 12th Street into a ramp upon the viaduct constitutes an alteration or change of location of that street, then there is no question but that such a petition was a condition precedent to the exercise of such authority by the County Commissioners. But what is meant by the expression "change or alteration of location" as used in such statutes?

In the case of *Manufacturers' Land & Imp. Co.* v. *City of Camden,* 71 N. J. L. 490, 59 A. 1, 2, the court said:

"* * * Doubtless a street may be said to be altered when its surface is raised or depressed. The question, however, is what the Legislature meant by the use of this word in the charter. In my judgment, it meant change of location, and not of grade. This is the natural and adjudicated significance of the word when used in connection with roads or streets. *Commonwealth* v. *Inhabitants of Westborough,* 3 Mass. 406, *Commonwealth* v. *Cambridge,* 7 Mass. 158. The word 'alteration' was employed in Judge Patterson's act, passed in 1799 (Pat-

terson's Law, 387), entitled 'An act relative to the laying out, vacating and altering roads.' The word has been employed in all the later acts. The present statute (3 Gen. St. p. 2828, § 119) provides for an application for the appointment of surveyors where a road is proposed 'to be laid out, vacated or altered.' The meaning always attributed to the word 'alteration' was change of route. Where it is effected by vacating a part of an old road and retaining a part, it is to be done in a single application. *State* v. *Bergen*, 1 Zab. 342 [21 N. J. L. 342]; *Green* v. *Loudenslager*, 54 N. J. L. 478, 24 A. 367.  *  *  * "

The following definitions are found in Vol. 2, Words & Phrases, First Series, pp. 1051, 1052, 1057, and are applicable to similar situations:

" 'Change' means to put one thing in the place of another; to exchange; to alter, or make different; to cause to pass from one place to another. *Territory* v. *Scott*, 3 Dak. 357, 20 N. W. 401, 422."

" 'Change in the location of a highway,' according to the ordinary meaning of the term, is a removal of the highway from one place to another. After the removal the highway does not exist in its former place. *Leighton* v. *Concord & M. R. R.*, 72 N. H. 224, 55 A. 938, 939,"

"As used in Rev. Code, c. 60, § 4, providing that the Court of General Sessions shall have jurisdiction to change public roads, 'change' should be construed to mean 'alter,' but is restricted by section 5, providing a procedure on a petition for changing the course of a public road, to mean 'change the course of,' and does not include widening a road. *In re Alston*, 1 Pennewill, 359, 40 A. 938."

The following definitions are found in other volumes of Words & Phrases:

"Under a municipal charter giving power to lay out and open and change the grade of, or otherwise improve, roads, avenues, streets, etc., and for that purpose to take and appropriate any land of the village, but providing that no road, street, etc., shall be opened and 'altered' unless all claims for damages on account of such opening or altering shall be released, the power to 'alter' did not cover a change in grade, and the village was not therefore bound to take any proceeding for the release of damages before changing the grade of a street. An alteration of a street, as the expression is used, generally refers to a change in the course thereof, and therefore necessarily involves to some extent, the establishment of a new highway, and the vacation of a part of the old highway for which the substitution is made. *Rogers* v. *Village of Attica*, 113 App. Div. 603, 98 N. Y. S. 665, 666." 1 Words and Phrases, Second Series, p. 198.

" 'Alteration of highway' means change of course of existing highway, leaving it substantially the same highway as before, but with its course in some respects changed. *Huening* v. *Shenkenberg* [208 Wis. 177], 242 N. W. 552, 553." 1 Words and Phrases, Fourth Series, p. 153.

" 'Alteration of highway,' as expression is used, generally refers to change in course thereof, and therefore necessarily involves to some extent the establishment of a new highway for which substitution is made. *Wilmar Co.* v. *Camden County*, 107 N. J. L. 230, 155 A. 26, 27." 1 Words and Phrases, Fourth Series, p. 153.

" 'Change of location'  *  *  *  means that there must be a removal from the old to the new location. *Matthews* v. *Codd*, 150 Va. 166, 142 S. E. 383, 384." 1 Words and Phrases, Fourth Series, p. 380.

From these decisions and statements, we gather that the dominant idea behind the expression "change or alteration of location" of a highway is its removal in part or in whole from one place to another—a change in its course. Widening it, or elevating or lowering it, is not such a change or alteration; nor is the diversion of traffic from it to other existing roads within the contemplation of that expression.

So far as the diversion of traffic is concerned, in this case, it simply amounts to this: All parts of 12th Street are still available for use, but to use some parts, traffic must detour. The boundaries of the street have not changed as to general location or direction, although they may have been widened under the necessity of such ramp construction. The roadbed has been elevated. From all the facts of this case, we can not say that 12th Street has, either in whole, or in part, been moved from one place to another—its course has not been changed. The manner of its use has been changed, but that is not a change in its course.

We are of the opinion that this case does not fall under Section 19-5-38 above; and for that reason proof of such a petition was unnecessary. The Commissioners had authority, by resolution, to enter upon this condemnation proceedings.

Appellants offered in evidence the testimony of another landowner of the vicinity. They sought to prove the value

of the Ritchie land taken by proving what this other owner had received from the County for his land for the same project. However, on voir dire it was disclosed that the sum of money this landowner received included damages to his remaining land. The court ruled out the testimony of this witness upon the ground that it was not proper evidence of value. Under the authorities we think this was correct. Although the decisions divide upon the question of admissibility of amounts paid by the condemner for other lands, there is little disagreement that compromise settlements, including damages, are not admissible. The proposed testimony did not segregate the sale price from the damages. It is questionable whether the price, had it been segregated, would have been proper testimony under the definition of market value as applicable to condemnation proceedings. 18 Am. Jur. p. 996, Sec. 352 and cases cited thereunder. Generally see 118 A. L. R. 869, citing *Telluride Power Co.* v. *Bruneau,* 41 Utah 4, 125 P. 399, Ann. Cas. 1915A, 1251.

The ruling of the court was not error.

A witness from the county assessor's office was permitted to testify concerning the ratio of the assessed value of property in Weber County to the actual value of property there. The court, however, would not permit him to testify to the assessed value of the Ritchie property. Appellants contend that he should not have been permitted to testify to the assessed value ratio either. Assuming he should not, it does not appear to have been prejudicial in this case as no assessed values were permitted as testimony. The possibility that the jury may have been influenced by its own knowledge of values, viewed in the light of this ratio, seems more imaginative than real.

Appellants' remaining assignments of error, except where they duplicate what has been covered above, are mentioned so briefly that it is apparent that appellants do not feel they are of particular merit. We see no prejudicial error in them,

however, and for that reason shall give them no further consideration.

Judgment and decree of the lower court is affirmed. Costs to respondent.

MOFFAT, C. J., and WOLFE, LARSON, and McDONOUGH, JJ., concur.