Anthony M. LOOK and A. M. Look
Canning Company

v.

STATE of Maine.

Supreme Judicial Court of Maine.

July 24, 1970.

George A. Wathen, Augusta, for plaintiffs.

Orman G. Twitchell, Bangor, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE and WEATHERBEE, JJ.

WEATHERBEE, Justice.

Plaintiffs are the owners of a small canning factory in Washington County which lies between Route No. 191 on the north and Holmes Bay on the south. A considerable area of land north of the highway was drained through a culvert under the highway and through a gully across Plaintiffs' land into the bay. On December 17, 1956 the State Highway Commission replaced the old culvert with a new but smaller one. In October of 1957 the Commission reconstructed 650' of highway, some of which was in front of Plaintiffs' land, widening the paved surface two feet and raising the grade 3½ to 4½ feet. For Plaintiffs' benefit and with their acquiescence the culvert was extended down the gully to extreme high water mark and the gully filled and levelled to provide a parking area for Plaintiffs' employees and customers.

The reconstruction did not involve the taking of any of Plaintiffs' land.

In September of 1959 an exceptionally heavy and extended rain occurred and the culvert, for reasons which are in dispute, failed to accommodate the water which accumulated north of the highway. Water ran over the surface of the highway in such volume and with such force that Plaintiffs' yard was badly eroded. Plaintiffs also claimed that a great deal of soil had washed from the highway and from Plaintiffs' land into the bay in such a manner as to accumulate in front of Plaintiffs' wharf, interfering with access to the plant by water and limiting the convenient and efficient use of the buildings.

In 1966 the Legislature enacted a Resolve which purported to authorize the Plaintiffs to institute a civil action against the State to recover damages sustained to their property "by the altering and changing of grade of Route 191". Such an action was brought and was heard before a Justice of the Superior Court. This matter is now before us on the State's appeal from the Justice's award of damages to the Plaintiffs which was based upon a finding of a limited responsibility on the part of the State.

The Defendant urges that in the enactment of the Resolve authorizing the bringing of this action, the Legislature went beyond the limitations upon its powers established by the Constitution.

Examination of the State's attack on the constitutionality of the Resolve must precede any consideration of the merits of Plaintiffs' claim.

■ The general principle is well established that the constitutionality of legislative action can be attacked only by persons whose rights are injuriously affected by the operation of the legislation. Belfast v. Belfast Water Co., 115 Me. 234, 240, 98 A. 738, 741 (1916); Inhabitants of Canton v. Livermore Falls Trust Company, 136 Me. 103, 3 A.2d 429 (1939); 16 Am.Jur.2d, Constitutional Law, § 119; 16 C.J.S. Constitutional Law § 76. Plaintiffs contend that the State here is without standing to raise the constitutional issue.

■ However, it is recognized that an exception occurs when the jurisdiction of the court depends upon the validity of the statute—as it does here—in which case a party interested in the effect to be given the statute although not adversely affected by its operation may direct the court's attention to the court's possible lack of jurisdiction. New York Life Insurance Co. v. Hardison, 199 Mass. 190, 85 N.E. 410 (1908); 16 Am.Jur.2d, supra, § 125; 16 C.J.S. supra, § 83. Inasmuch as the parties cannot confer jurisdiction where the law has not given it the court may also

on its own initiative examine its jurisdiction. Casco Bank & Trust Co. v. Johnson, Me., 265 A.2d 306 (1970).

Examination of early legislation reveals that as paramount responsibility for highway construction and maintenance shifted from town to county to state, statutes were enacted providing for compensation for some injuries thus caused to land which did not involve actual takings. In 1913 our Legislature enacted Chapter 130, which created a State Highway Commission. Section 14 read in part:

"The commission may alter, widen or change the grade of any state or state aid highway whenever in its judgment the public exigency may require * * * The commission shall fix a time and place for hearing on any such alteration, widening, change of grade or laying out, which may affect parties interested, giving at least fourteen days' notice of the time and place of hearing in the same manner as provided by statute in respect to laying out highways. If after a view of such way the commission shall judge that the public necessity requires that such way be altered, widened, changed or graded, * * * it shall proceed to perform the duties required, and make a correct return of its doings accompanied by an accurate plan of such highway as * * * altered; and shall proceed to estimate and award such damages in the same manner as provided by statute in respect to highways. The return of the commission and all rights of appeal by parties aggrieved by their proceedings shall be the same as provided by statute in respect to highways. Damages found as above provided shall be apportioned by the commission as law and justice may require and shall be paid accordingly."

At the next session there was enacted P.L. 1915, chap. 300 which eliminated the requirement that the Commission determine all damages occasioned by the altering, widening or changing of grade of a highway. Instead, it provided a procedure for an injured landowner to seek redress from the Commission but limited the procedure to applications made within six months.

"Whenever the Commission shall alter, widen or change the grade of any state or state aid highway as herein provided, to the injury of an owner of adjoining land he may within six months apply in writing to the Commission setting forth the injury complained of and the damages claimed therefor, and they shall view such way and assess the damages if any, that have been occasioned thereby, to be apportioned by the Commission as law and justice may require and shall be paid accordingly, and any person aggrieved by said assessment may have the damages determined on complaint to the Supreme Judicial Court."

In effect, Chapter 300 created a six month statute of limitations.

Essentially the same statutory situation prevailed (for our purposes) at the time of the Resolve except that in 1955 the Legislature eliminated the words "alter" and "widen", thus limiting the landowner's use of this statutory remedy to damages resulting from *change of grade*.

Thus on January 31, 1966 when the Legislature by Private and Special Legislation purported to grant Plaintiffs permission to sue the State to recover damages resulting from the *altering and changing of grade* of Route 191 there was in effect (and had been at the time of the rebuilding of the highway) a specific general law creating a remedy for damages resulting from *changing the grade* of a highway.

We must examine the Resolve as measured against the limitations upon legislative authority established by the Constitution. In doing so we are guided by the principle that all acts of the Legislature are presumed to be constitutional and this is a presumption of great strength. State v. Fantastic Fair and Karmil, 158 Me. 450,

466, 186 A.2d 352 (1961); First National Bank of Boston v. Maine Turnpike Authority, 153 Me. 131, 171, 136 A.2d 699 (1957).

Art. IV. Part Third, § 13 of the Constitution of Maine reads:

"The Legislature shall, from time to time, provide, as far as practicable, by general laws, for all matters usually appertaining to special or private legislation."

The Legislature did find it practicable to provide by general law a remedy for all owners of adjoining land damaged by the changing of grade of a highway. This remedy was available to Plaintiffs, as it was to all landowners, for a period of six months after the completion of the changing of grade, although doubtless requiring in Plaintiffs' case anticipatory determination of the effects of the change upon their land.

The Resolve, as far as it is concerned with damages resulting from change of grade, seeks to convey a privilege to the Plaintiffs—that is, an escape from the statutory six months limitation—which the general law does not give to other citizens. To that extent this special legislation favoring the Plaintiffs is estopped by the bar of Section 13. Maine Pharmaceutical Assn. v. Board of Commissioners, Me., 245 A.2d 271 (1968); Opinion of the Justices, 146 Me. 316, 322, 80 A.2d 866, 868 (1951).

We also hold that the Legislature's attempt to exempt Plaintiffs from the requirement that landowners damaged by change of grade must make application for assessment of their damages within six months after the completion of the work—notwithstanding the reasons impelling the Legislature's action—violates the equal protection guarantees of both State and Federal Constitutions. Maine Constitution, Art. 1, §§ 1 and 6–A; Federal Constitution, 14th Amendment. The Resolve attempts to dispense with the general law in favor of the Plaintiffs.

"On principle, then, it can never be within the bounds of legitimate legislation to enact a special law, or pass a resolve dispensing with the general law, in a particular case, and granting a privilege and indulgence to one man, by way of exemption from the operation and effect of such general law, leaving all other persons under its operation." Lewis v. Webb, 3 Me. 326 (1825).

 We must bear in mind that while a specific general statute created a remedy for damages caused by a *change of grade,* the Resolve undertook to permit Plaintiffs to sue for damages resulting from the altering *and* changing of grade. We find that "alter" is given a limited and specific meaning in highway legislation.

Alteration and change of grade are not synonymous terms. As we have noted, in 1913 the Legislature authorized the newly created State Highway Commission to "alter, widen or change the grade" of state or state aid highways and provided a statutory procedure for injured landowners to recover their damages. In 1955, c. 424 the Legislature struck the words "alter" and "widen" from the statutory procedure for recovery of damages by an amendment entitled "An Act Repealing Obsolete Highway Laws and Clarifying Project Completion Dates". (This Act also repealed several old statutory provisions regarding apportionment of highway funds, third class road designations, repair of watering troughs, width of cart wheels, etc., not of interest to us here.)

Explanation for the Legislature's apparent conclusion that no specific procedure was necessary for recovery of damages for the state's *altering* or *widening* highways is found in the history of that particular terminology. Among the first enactments of the Legislature of the State of Maine was the provision:

"That when a new highway from town to town, or place to place, shall be wanting or where an highway already

laid out, stated and established, may or can with greater convenience be turned or altered, upon application made to the Court of Sessions within the County. * * *

Provided always: That if any person be damaged * * * by the laying out or altering such highway * * *" P.L. 1821, chap. 118, § 1.

This language was taken from statutes of the parent state where the Massachusetts Court had already given the word "alter" a limited and specific meaning when used in connection with highways. In Commonwealth v. Westborough, 3 Mass. 406 (1807) the Court held that a statutory application for "alteration" of a way authorized only the construction of a portion of way which would replace a portion of an already existing way—in contrast to the building of a new way—thus discontinuing the replaced portion.

In Commonwealth v. Cambridge, 7 Mass. 158 (1810) the petition alleged that an existing road should be "turned or altered" in two places. It was urged by the Defendant that the replaced portions were not thus discontinued because a road, the Defendant contended, may be *turned* without being *altered*. It was held that these terms are synonymous as there used and that an alteration of a highway results in a discontinuance of the replaced part of the old road, the course of which was turned. It is of interest that the Massachusetts Court added:

"As to the reasoning from the widening of an existing road, it does not appear to have any weight; for the widening of a road is not turning or altering any part of it, but extending the public easement to other lands adjoining, by which they also become a part of the highway."

The specific signification of "alter" announced by the Massachusetts Court was adopted by our own Court in Raymond v. Cumberland County Commissioners, 63 Me. 112 (1874) and in Ford v. Erskine, 109 Me. 164, 83 A. 455 (1912), both of which rely upon *Cambridge*. The reasoning of these cases persuades us that changes of surface or width of an existing highway which are contained within the original right of way do not constitute an alteration. The alteration contemplated by the statute refers to a change of course of part of a highway. We find that other authorities have reached similar conclusions.

"The alteration of a highway, as the word itself indicates, means the change of course of an existing highway, leaving it substantially the same highway as before but with its course in some respects changed. Huening v. Shenkenberg, 208 Wis. 177, 242 N.W. 552, 553 (1932).

"An alteration of a highway, as the expression is used, generally refers to a change in the course thereof, and therefore necessarily involves, to some extent, the establishment of an new highway, and the vacation of a part of the old highway for which the substitution is made." 15 American and English Encyclopedia of Law (2d Ed.) 392, 393, quoted with approval in Rogers v. Village of Attica, 113 App.Div. 603, 98 N.Y.S. 665 (1906).

See also Weber County v. Ritchie, 98 Utah 272, 96 P.2d 744 (1939); 3 Words and Phrases, Perm.Ed. p. 418.

"An 'alteration' of a highway, as the term is generally used, refers to a change in the course thereof, and does not include the mere leveling, change of grade, or repair of an existing highway, although, in the absence of statutory restriction, it is deemed sufficiently broad to include a change in width. While it is distinguishable from the establishment of a new highway and the discontinuance of an old highway, it necessarily involves to some extent the establishment of a new highway and the vacation of part of an existing highway." 39 C.J.S. Highways § 96.

It is understandable that our Legislature, accepting the limited application of the

words "alter" and "widen", decided that a specific statutory procedure for awarding damages for altering and widening highways by the State was unnecessary. The specific meanings attached to those two words is such that an altering or widening necessarily entails a further taking of land the determination of compensation for which would not require special statutory authority.

The legislature, having accepted the specific, limited meaning of the word alter in 1955, must reasonably be assumed to have intended the same meaning in the 1966 Resolve.

In our case, the Justice in the Superior Court found that Plaintiffs had failed to prove that reduction in the depth of water in front of Plaintiffs' wharf with its alleged resulting decrease in efficiency of their plant and reduction in value of their property resulted from any action taken by the State. He did find, however, that *"rebuilding* of the highway and change of the grade of the road surface did cause a quantity of water to wash down into Plaintiffs' gravelled yard" (emphasis added) damaging the yard, for which he awarded damages.

The Justice did not specify the nature of the rebuilding that he found to have caused damage to the Plaintiffs. The Resolve, however, sought to authorize him to award only damages resulting from *alteration* and change of grade of the highway. It failed in its purpose as to damages resulting from change of grade because of constitutional prohibitions. While the rebuilding of the highway resulted in some change in its slopes and surface (along with the change of grade) the evidence presented to the Justice demonstrates beyond disputation that the rebuilt section of highway follows the same course as the old section. The evidence showed no alteration of this highway and therefore no damages could be awarded.

Appeal sustained.

POMEROY, J., did not sit.