**Barry A. BRANN**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued Sept. 16, 1980.

Decided Jan. 14, 1981.

Richard M. Morton (orally), Holman & Cullenberg, Ronald J. Cullenberg, Farmington, for plaintiff.

Steven F. Wright (orally), Asst. Atty. Gen., Charles D. Devoe, Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN, ROBERTS and CARTER, JJ.

CARTER, Justice.

The plaintiff, Barry Brann, filed suit in Superior Court against the State of Maine, pursuant to a Private Resolve enacted by the Maine Legislature in 1979.[1] His complaint alleged permanent personal injuries received in September, 1975, as a result of the State's negligence, while he was an inmate at the State Prison in Thomaston. According to the plaintiff's complaint and the statement of facts in the private resolve, the plaintiff received disabling permanent injuries to his right hand and arm when he fell through a window while participating in a basketball game organized and supervised by members of the prison staff. Brann alleged that the prison staff organized the basketball game, knowing that the gymnasium was unsafe because the windows' protective screens had been removed for painting, knowing that the prison administration had prohibited use of the basketball court until the screens were replaced, but failing to provide any warnings or other safeguards for the prisoners' protection. The private resolve authorized Brann to sue the state for damages from this incident and authorized and designated the attorney general to "appear, answer, and defend" the action.

The Superior Court granted the state's motion to dismiss, pursuant to M.R.Civ.P. 12(b)(1), holding that the court lacked jurisdiction because the private resolve violated the equal protection clause and the special legislation clause of the Maine Constitution.

We conclude that the private resolve is valid, the court does have jurisdiction, and the Superior Court erred in granting the motion to dismiss.

I.

In *Davies v. City of Bath*, Me., 364 A.2d 1269 (1976), we held that sovereign immunity would no longer be a bar to tort actions against the state for causes of action arising on or after February 1, 1977. Since Brann's alleged injuries occurred prior to that date, the state's sovereign immunity would bar this suit, but for the private resolve in which the state specifically gave its consent to be sued.

The state argues that the waiver of sovereign immunity is invalid because the private resolve violates the state constitution. We will not speculate as to whether the legislature intended that the Attorney General attack the constitutionality of the resolve or merely confine himself to defending the case on its merits. Since the plaintiff has not raised the issue, we do not

1. Resolves, ch. 10, 1979 Me. Acts reads:

RESOLVE, Authorizing Barry A. Brann of Wilton to Bring Civil Action Against the State of Maine.

Barry A. Brann; authorized to sue the State of Maine. Resolved: That Barry A. Brann of Wilton, County of Franklin and State of Maine, who suffered permanent personal injuries while an inmate at the Maine State Prison, be authorized to bring suit against the State of Maine.

On or about September 27, 1975, Mr. Barry A. Brann of Wilton, Maine, while a sentenced prisoner at the Maine State Prison in Thomaston, severely and permanently injured the nerves and tendons of his right arm and hand when he crashed through a glass window which was not properly safeguarded due to the alleged negligence of state employees in removing the window's protective screen for repainting.

This action, if authorized, is to be brought in the Superior Court for the County of Franklin within one year from the passage of this resolve, against the State of Maine for damages,

if any, and the conduct of this action shall be according to the practice of actions or proceedings between parties in the Superior Court. The liabilities of the parties and elements of damage, if any, shall be the same as liabilities and elements of damage as between individuals. The complaint issuing out of the Superior Court under the authority of this resolve shall be served on the Secretary of State by attested copy by the sheriff or his deputies in any county of the State. The Attorney General is authorized and designated to appear, answer and defend this action.

Any judgment that may be recovered in this civil action shall be payable from the State Treasury on file [sic] process issued by the Superior Court, or, if applicable, the Supreme Judicial Court and costs may be taxed for Barry A. Brann if he recovers in the action, and his recovery shall not exceed $50,000, including costs. Hearing thereon shall be before a justice, with or without jury; the justice to be the regularly scheduled justice presiding in the Franklin County Superior Court when this matter is scheduled for trial.

consider whether the state is estopped to question the validity of its own legislative act. *See Sweeney v. State*, 251 N.Y. 417, 167 N.E. 519 (1929); *State ex rel. Clemmer & Johnson v. Turner*, 93 Ohio St. 379, 113 N.E. 327 (1916).

We do question whether the state has standing to attack the constitutionality of the private resolve. One who attacks the constitutionality of a legislative act must be actually deprived of a constitutional right by that legislation. *State v. Van Reenan*, Me., 355 A.2d 392, 394 (1976). Since the state has no constitutional rights that will be affected by the operation of this private resolve, ordinary rules of standing would preclude it from challenging the resolve's validity and from raising equal protection issues that do not affect any parties to this litigation.[2]

Even if the state does not have standing to attack the validity of the private resolve, it may direct the court's attention to our possible lack of jurisdiction. The court must always take note of matters raising questions as to its own jurisdiction. *Dillon v. Johnson*, Me., 322 A.2d 332 (1974).

The constitutional validity of a private resolve's waiver of sovereign immunity is a jurisdictional question. *Nadeau v. State*, Me., 395 A.2d 107, 111 (1979); *Look v. State*, Me., 267 A.2d 907, 908 (1970).[3] If the legislation in which the state waives its sovereign immunity is unconstitutional, then its consent to suit has not been validly given, and the court has no jurisdiction to entertain the suit. Since the jurisdiction of both the trial court and this court depend upon the validity of the private resolve, we will examine its constitutionality upon our own initiative, and we need not determine the precise boundaries of the state's standing.

## II.

In *Nadeau v. State*, Me., 395 A.2d 107 (1978), the state raised the same constitutional challenge to a private resolve waiving sovereign immunity. We stated that a private resolve that singles out one person for special legislative attention must survive scrutiny under both the equal protection clause, Me.Const., art. 1, § 6–A, and the special legislation clause, Me.Const., Art. 4, Pt. 3, § 13. Although we found that Nadeau's complaint should be dismissed for failure to state a claim, we upheld the constitutionality of his private resolve.

The Superior Court below, citing our decision in *Nadeau*, found Brann's resolve unconstitutional because "this Court is unable to say that it is highly improbable that there are other prisoners injured in a state institution while serving a sentence, unable to say that the circumstances and facts are highly unique." Our decision in *Nadeau* did involve a very unusual factual

---

2. Exceptions to this rule of standing have been recognized when an attack on constitutionality is made by the Attorney General or other public official, acting in the public interest. *State ex rel. Meyer v. Peters*, 188 Neb. 817, 199 N.W.2d 738 (1972). In *Associated Hospital Services v. Mahoney*, 161 Me. 391, 213 A.2d 712 (1965), we recognized the Insurance Commissioner's standing to challenge the constitutionality of the plaintiff's private charter where a conflict existed between the private charter and the Public Law with respect to insurance contracts to be offered to the public. We noted that the Commissioner's standing was limited to questioning the validity of the charter under Maine Constitution, art. IV, pt. 3, § 14, pertaining to corporations created by Special Legislation. We stated that the equal protection issues were properly raised by intervening parties whose interests were directly affected by the legislation. *Accord, State ex rel. Douglas*

*v. Gradwohl*, 194 Neb. 745, 235 N.W.2d 854 (1975). (Because state revenue was involved, the Attorney General had standing to attack legislation on basis of special legislation clause of Nebraska constitution, but not permitted to raise general equal protection issues where no party to the litigation was directly affected.)

3. Although we here characterize the question of the waiver of sovereign immunity as jurisdictional, it may not be so characterized in all contexts. We do not decide, where the state has granted general consent to suit by adoption of a comprehensive tort claims statute such as the Maine Tort Claims Act (14 M.R.S.A. §§ 8101 *et seq.*), whether the assertion that a particular tort claim is not within the scope of such a statute is an assertion of lack of jurisdiction, or is the assertion of an affirmative defense.

situation, but we did not set forth the language quoted by the Superior Court as the standard for testing the constitutionality of a private resolve. The Superior Court erred in failing to recognize that a private resolve—like every act of the legislature—is presumed to be constitutional. *Nadeau*, 395 A.2d at 111; *Orono-Veazie Water District v. Penobscot County Water Co.*, Me., 348 A.2d 249, 253 (1975). The burden of showing a constitutional violation is on the party who asserts an infirmity. *Union Mutual Life Insurance v. Emerson*, Me., 345 A.2d 504, 507 (1975). In this case, the defendant was permitted to raise the constitutional issues for purposes of questioning the court's jurisdiction, but it provided no evidence at all from which the Superior Court could have found a constitutional violation.

## A

■ In reviewing the state's equal protection challenge to the private resolve in *Nadeau*, we used the same rational basis test that applies to general legislation where no fundamental right or suspect classification is involved. The law need not operate uniformly on all individuals "as long as those affected are reasonably different from those excluded and there is a rational basis for treating them differently." *Nadeau*, 395 A.2d at 113; *McNicholas v. York Village Corp.*, Me., 394 A.2d 264, 269 (1978).

■ The state argues that the plaintiff's status as a prisoner is not a rational basis for distinguishing him from the class of other persons injured by the state's tortious conduct prior to the abrogation of sovereign immunity. We disagree. We can readily attribute to the legislature a rational basis for this distinction. A prisoner living under state custody and control, who is injured under circumstances alleged to constitute gross negligence or misuse of authority, is in a significantly different position from that of other persons injured by the state's ordinary negligence in areas routinely used by the general public. The state may rationally, because of this difference, decide to assume a greater responsibility for the prisoner's injuries. The legislature may waive sovereign immunity for as limited a class as it sees fit as long as the limitation is not arbitrary and there is equality of right to all persons similarly situated. *Nadeau*, 395 A.2d at 113.

■ Before the court can find an equal protection violation, it must at least have some indication that there exist similarly situated persons who have not been treated equally. The only similarly situated persons would be prison inmates injured under similar circumstances after June, 1974—the date before which the statute of limitations would bar tort claims—and before February 1, 1977—the date after which tort claims would no longer be barred by sovereign immunity. Since the state has made no such evidentiary showing, we can only speculate as to whether there are other persons in that class.

Even if we assume that there are other persons in the plaintiff's class, there is no evidence that they have been arbitrarily denied equal treatment. The legislature could legitimately prefer to deal with prisoners' claims on a case-by-case basis and to waive sovereign immunity only after considering the specific circumstances of each case. Since the Superior Court was given no indication that any similarly injured prisoner has applied for and been denied the legislative dispensation granted to Barry Brann, it should not have assumed that any violation of equal protection occurred. The impact of such a legislative denial may be determined, if and when it occurs, with specific reference to the rights of any person thereby denied relief.

In this case, there has been no challenge to the private resolve from any party whose rights are directly affected. The state has made no showing that there exist any similarly situated persons who have been denied equal protection. Therefore, with respect to the equal protection clause, the presumption of constitutionality should stand.

## B

The private resolve also activates the special legislation clause, Me.Const., Art. IV, Pt. 3, § 13, which states:

The Legislature shall, from time to time, provide, as far as practicable, by general laws, for all matters usually appertaining to special or private legislation.

We have construed this clause as a mandatory provision, so that special legislation is unconstitutional if a general law has been enacted or could have been made applicable. *Nadeau*, 365 A.2d at 112. We have found this clause to be violated by special legislation attempting to exempt one individual from generally applicable requirements of the law. *Look v. State*, Me., 267 A.2d 907 (1970) (private resolve attempted to exempt named persons from statutory time limitation for bringing action against state for property damages); *Maine Pharmaceutical Association v. Board of Commissioners*, Me., 245 A.2d 271 (1968) (private bill purported to exempt named individual from statutory requirements for pharmacist's license).

Although we have stated that the special legislation clause also applies with full force to private resolves removing the bar of sovereign immunity, we have never used it to invalidate such legislation. *Nadeau*, 365 A.2d at 113. Prior to our decision in *Nadeau*, the legislature's tradition of consenting to suit by enacting private resolves had never been challenged or reviewed on constitutional grounds. *See Turner v. Collins*, Me., 368 A.2d 1160 (1977); *Hilton v. State*, Me., 348 A.2d 242 (1975) (authorizing wrongful death suit by personal representative of person killed by state trooper); *Kerr v. State*, 127 Me. 142, 142 A. 197 (1928) (contractor authorized to sue on contract with state); *Austin W. Jones Co. v. State*, 122 Me. 214, 119 A. 577 (1923) (plaintiff authorized to sue for damages caused by inmate negligently released from mental hospital); *Marshall v. State*, 105 Me. 103, 72 A. 873 (1909) (administrator of estate authorized to sue for salary due from state for decedent's services).

■ In *Look* and *Maine Pharmaceutical*, we found that the private resolves also violated the equal protection clause. In each case, our holding that general legislation was practicable was secondary to our holding that the special legislation violated equal protection. Since the legislative objective was improper, either general or special legislation would have been unconstitutional. In this case, as in *Nadeau*, we have already recognized that the resolve served a valid purpose and did not violate equal protection. Since the special legislation serves a legitimate objective, the appropriate question under section 13 is whether that particular objective could have been more fully attained through general legislation.

■ Unlike the equal protection clause, the special legislation clause does not call for inquiry into the rights or the existence of similarly situated persons. As long as there is no violation of the equal protection clause, validity under the special legislation clause does not depend on unique facts or highly unusual circumstances. The standard provided by the Constitution is that general legislation must be used "as far as practicable." It is appropriate for the legislature rather than the court to make the policy decision regarding what is practicable in a given situation.[4]

■ We affirm our concern about the use of special legislation, with its potential for "privilege, favoritism, and monopoly." *Nadeau*, 365 A.2d at 114. Here, however, the record gives no indication that general legislation could attain the limited legislative objective of waiving sovereign immunity for injured prisoners. By enacting a general tort claim act,[5] the legislature has responded to the mandate of the special legislation clause and eliminated the need

---

4. In his address to the legislature at the time the special legislation clause was added to the constitution, the Governor stated: "Section thirteen presents a discretionary field of action which your own honor will impel you to occupy to the fullest extent." Inaugural address of Governor Selden Connor, delivered before the 55th Legislature, 1876 Me. Acts at 145, 165.

5. The Maine Tort Claims Act, 14 M.R.S.A. §§ 8101–8118, became effective on July 1, 1977. Section 8104(2) provides for liability with regard to negligent construction, operation, or maintenance of public buildings.

for future special legislation in the area of tort claims. In the meantime, it may not be practicable for the legislature to enact another general piece of legislation to deal with certain classes of claims not included within the time frame of the general act. There may be compelling policy reasons relating to considerations of prisoner discipline and effective administrative control of institutional populations militating against the enactment of a *general* statutory remedy. The legislature could legitimately conclude that the only practical means of attaining its objective was to deal with claims on a case-by-case basis through private resolves.

We find nothing in the record to overcome the presumption that the legislature acted within the bounds of constitutionality. The private resolve made a rational legislative distinction and it served a valid legislative objective that could not practicably have been attained by general legislation. Therefore, we find no violation of either the equal protection or the special legislation clauses.

Since the state had validly consented to be sued by Barry Brann, we remand to the Superior Court for further proceedings.

The entry must be:

Judgment vacated.

Case remanded for further proceedings consistent with the opinion herein.

All concurring.