**Laurinda L. DAVEY**

v.

**LINCOLN COUNTY.**

**Laurinda L. DAVEY**

v.

**MAINE STATE
RETIREMENT SYSTEM.**

Supreme Judicial Court of Maine.

Argued Jan. 14, 1986.

Decided Feb. 28, 1986.

Stinson, Lupton & Weiss, P.A., Ronald Lupton (orally), Bath, for plaintiff.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Charles S. Einsiedler, Jr. (orally), Portland, for County Com'rs.

James E. Tierney, Atty. Gen., Cabanne Howard (orally), Senior Associate Atty. Gen., Jerome S. Matus, Asst. Atty. Gen., Augusta, for Maine State Retirement System.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

These consolidated appeals raise the question of which governmental entity

---

must pay pension benefits to the surviving widow of Donald Davey, a Lincoln County deputy sheriff killed in the line of duty. The Superior Court (Lincoln County) held that the Maine State Retirement System, rather than Lincoln County, was required to pay the pension. We disagree, and hold that a correct reading of the controlling statutes requires the County, rather than the State Retirement System, to pay the pension that accrued to the widow prior to her remarriage.[1]

## I. Background

Lincoln County Deputy Sheriff Donald Davey died on July 30, 1984, as a result of injuries he received in a car accident while engaged in a criminal investigation. He was survived by a widow and two minor children. At the time of his death Davey was not a member of the State Retirement System, having expressly withdrawn on February 28, 1979. Nonetheless, his widow applied to the State Retirement System for pension benefits pursuant to 5 M.R.S.A. § 1121(7) (1979) (hereinafter referred to as the "State Retirement Provision").[2] After the Board of Trustees denied her application, she moved for an M.R.Civ.P. 80C review of the Board's decision in Superior

Court. Davey's widow also requested that the County pay pension benefits to her pursuant to 30 M.R.S.A. § 851 (1978) (hereinafter referred to as the "County Pension Provision").[3] After the county commissioners denied that request, she moved for an M.R.Civ.P. 80B review of the County decision in Superior Court. Her Rule 80B and 80C actions were consolidated. The Superior Court upheld the county commissioner's decision to deny the pension benefits, but vacated the decision of the Board of Trustees of the State Retirement System and ordered it to pay the statutory benefits to Davey's widow. Both the State Retirement System and the widow now appeal the decisions against them, and the two appeals have been consolidated.

The two controlling statutes in this case were originally enacted in 1955 as sections 1 and 2 of the same bill. P.L.1955, ch. 362. Section 1, the State Retirement Provision, amended the then-existing State Retirement System Act in regard to the payment of pension benefits to the survivors of sheriffs and deputy sheriffs killed in the line of duty. That State Retirement Provision read as follows:

1. At oral argument counsel advised the court that Mrs. Davey has remarried.

2. At the time of Davey's death, the statute providing for the payment by the State Retirement System of benefits to survivors of sheriffs and deputy sheriffs killed in the line of duty, 5 M.R.S.A. § 1121(7) (1979), read as follows:

> If a sheriff or deputy sheriff shall die as a result of injury received in line of duty, except while engaged in the duty of serving civil process, his surviving spouse, or, if none, his minor child or children, shall receive a pension equal to ½ of the average final compensation of such sheriff or deputy sheriff at the time of his death, but in no case shall such pension be less than $1,000. Such pension shall be paid to the surviving spouse until he or she dies or becomes the dependent of another person, and to a child or children until they die or reach the age of 18 years.

Subsequent to Davey's death, 5 M.R.S.A. § 1121(7) was repealed by P.L.1985, ch. 38, § 1.

3. At the time of Davey's death, the statute providing for the payment by a county of pension benefits to the survivors of sheriffs and deputy

sheriffs killed in the line of duty, 30 M.R.S.A. § 851 (1978), read as follows:

> If a sheriff or deputy sheriff shall die as a result of injury received in line of duty, except while engaged in the duty of serving civil process, his widow, or, if none, his minor child or children, shall receive a pension equal to ½ of the pay of such sheriff or deputy sheriff at the time of his death, but in no case shall such pension be less than $1,000. Such pension shall be paid to the widow until she dies or remarries and to a child or children until they die or reach the age of 18 years. This section shall apply to deputy sheriffs who are not employed at regular salaries.
>
> The county commissioners of each county are authorized and directed to pay such pensions from county funds.

Subsequent to Davey's death, 30 M.R.S.A. § 851 was amended by P.L.1985, ch. 36 to read: "This section shall *also* apply to deputy sheriffs who are not employed at regular salaries." (Emphasis added) This subsequent amendment, of course, reveals nothing as to the 1955 Legislature's intent in the original enactment. *Stone v. Board of Registration in Medicine,* 503 A.2d 222, 227 n. 10 (Me.1986).

V–A. If a sheriff or deputy sheriff shall die as a result of injury received in line of duty, except while engaged in the duty of serving civil process, his widow, or, if none, his minor child or children, shall receive a pension equal to ½ of the pay of such sheriff or deputy sheriff at the time of his death, but in no case shall such pension be less than $1,000. Such pension shall be paid to the widow until she dies or remarries and to a child or children until they die or reach the age of 18 years.

P.L.1955, ch. 362, § 1, enacting R.S. ch. 64, § 6(V–A), which was 5 M.R.S.A. § 1121(7) (1979) at the time of Davey's death. See n. 1 above.

Section 2 of the 1955 law, the County Pension Provision, amended the then-existing statutes relating to counties by adding a new section, numbered 173–A, which provided for the payment by a county of pension benefits to the survivors of sheriffs and deputy sheriffs killed in the line of duty. That County Pension Provision read as follows:

Sec. 173–A. Pensions for dependents. If a sheriff or deputy sheriff shall die as a result of injury received in line of duty, except while engaged in the duty of serving civil process, his widow, or, if none, his minor child or children, shall receive a pension equal to ½ of the pay of such sheriff or deputy sheriff at the time of his death, but in no case shall such pension be less than $1,000. Such pension shall be paid to the widow until she dies or remarries and to a child or children until they die or reach the age of 18 years. The provisions of this section shall apply to deputy sheriffs who are not employed at regular salaries.

The county commissioners of each county are authorized and directed to pay such pensions from county funds.

P.L.1955, ch. 362, § 2, enacting R.S. ch. 89, § 173–A, which was 30 M.R.S.A. § 851

(1978) at the time of Davey's death. See n. 3 above.

As can be readily seen, the two sections of the 1955 bill were identical except for the additional two sentences in section 2, the County Pension Provision, reading "The provisions of this section shall apply to deputy sheriffs who are not employed at regular salaries," and "The county commissioners of each county are authorized and directed to pay such pensions from county funds." Except for minor changes in the State Retirement Provision,[4] the two statutes remained unchanged from 1955 until after the date of Davey's death.

We agree with the Superior Court that in simultaneously enacting these two provisions the 1955 Legislature intended to ensure compensation for the families of all sheriffs and deputy sheriffs killed in the line of duty. "When it is clear that the Legislature enacted specific legislation to remedy an existing special problem, … such statutory enactment must be construed so as to promote the policy consideration which brought about the Legislature's action." *Waddell v. Briggs*, 381 A.2d 1132, 1135 (Me.1978). Our next task is to determine which governmental entity the Legislature intended to bear the financial burden in the fact circumstances of the case at bar.

II. *Liability of the County*

■ The County contends that the 1955 Legislature in enacting the County Pension Provision intended that a county would be responsible for paying a pension *only* to the survivors of a deputy sheriff who was compensated by fees or otherwise than by a regular salary. It bases that contention upon the penultimate sentence of that Provision, which reads: "The provisions of this section shall apply to deputy sheriffs who are not employed at regular salaries." We reject the County's contention, finding that the legislative intent encompasses all sher-

---

**4.** P.L.1975, ch. 622, § 51 substituted the term "average final compensation" for the word "pay."

iffs and deputy sheriffs, including Davey who was paid a regular salary.

In interpreting a statute we look first to the language of the statute itself, and if its meaning is plain we must interpret the statute to mean exactly what it says. *Stone v. Board of Registration in Medicine*, 503 A.2d 222, 227 (Me.1986); *Concord General Mutual Insurance Co. v. Patrons-Oxford Mutual Insurance Co.*, 411 A.2d 1017, 1020 (Me.1980). A reading of the County Pension Provision shows that its language squarely covers Davey. It applies to *any* sheriff or deputy sheriff. The first sentence reads, "If a *sheriff* or deputy sheriff shall die as a result of injury received in the line of duty ... [his survivors] shall receive a pension...." (Emphasis added) In 1955 when that provision was originally enacted, county sheriffs were "regular" salaried employees as shown by R.S. ch. 89, § 149 (1954), which set out the *annual* salaries for the sheriffs of each county.[5] Since sheriffs were always employed at regular salaries, the penultimate sentence of the section, if read to make the County Pension Provision exclude sheriffs and apply only to deputy sheriffs who are not employed at regular salaries, would render the word "sheriff" in the first sentence meaningless. Because "[s]tatutory language should not be read so as to render it useless if a reasonable alternative construction is possible," *Opinion of the Justices*, 460 A.2d 1341, 1346 (Me.1982), such a construction must be rejected.

If the 1955 Legislature had wished to make that section apply *only* to deputy sheriffs who were not employed at regular salaries, it would have drafted the County Pension Provision simply as follows: "If a deputy sheriff who is not employed at a regular salary shall die as a result of injury received in the line of duty...." The Legislature chose not to do so; rather it used plain and comprehensive language that included *all* sheriffs and their deputies, however they were paid.

Examination of the State Retirement System Act as it existed at the time of the enactment of the County Pension Provision bolsters our construction of the latter statute. "Every statute must be construed in connection with the whole system of which it forms a part and all legislation on the same subject matter must be viewed in its overall entirety in order to reach an harmonious result which we presume the Legislature intended." *Finks v. Maine State Highway Commission*, 328 A.2d 791, 795 (Me.1974). In 1955, the State Retirement System Act provided the following in regard to county employees:

> The employees of any county ... may participate in the retirement system, to the full extent of any and all benefits provided for in this chapter provided the county commissioners ... approve such participation and file with the board of trustees [of the Retirement System] a duly certified copy of the resolution of the county commissioners....

R.S. ch. 64, § 17(I), now 5 M.R.S.A. § 1092(1) (1979). County employees who became members of the State Retirement System and on whose behalf contributions were paid by their counties of employment as required by R.S. ch. 64, § 17(IV) (1954) were entitled to benefits "as though they were state employees." *Id.*, § 17(V). It is significant that the Retirement System Act defined an "employee" as "any *regular* classified or unclassified" employee, and "member" was defined as "any employee." *Id.*, § 1 (emphasis added). It thus appears that deputy sheriffs who were not employed at regular salaries could not be members of the State Retirement System, even if the counties employing them participated in the State System. This fact explains why the 1955 Legislature added the penultimate sentence of the County Pension Provision. The Legislature recognized that some, if not most, deputy sheriffs were compensated by fees or per diem, rather than by a regular salary. *See* R.S. ch. 89, § 150 (1954); *see also id.* § 173

---

5. This is still true today under 30 M.R.S.A. §§ 2, 908 (1978 & Supp.1985–1986).

(three special deputies in Cumberland County). It was obviously important that this class of county law enforcement officers be clearly included within the coverage of the County Pension Provision. There thus is no reason to think that the 1955 Legislature added the penultimate sentence in order to exclude any deputies or sheriffs who enjoyed a regular salary.

Assuming that only those county employees who were paid regular salaries were eligible for membership in the State Retirement System, it is also important to note that only employees of participating counties were eligible for membership. Therefore, a county employee paid at a regular salary could become a member of the State Retirement System only if his county of employment had chosen to participate. In 1955 participation by counties in the State Retirement System was far from unanimous—only seven of Maine's sixteen counties had entered the system.[6] Therefore, over one half of Maine's counties had sheriffs, as well as perhaps deputy sheriffs, who were paid regular salaries but who could not become members of the State Retirement System. It would be highly anomalous if deputy sheriffs who were paid by fees would be entitled to benefits from the county if they were killed in the line of duty but salaries sheriffs and deputy sheriffs in nonparticipating counties would not be entitled to the same benefits. Such a construction of the County Pension Provision would defeat the intent of the Legislature to provide benefits to the dependents of all sheriffs and deputy sheriffs killed in the line of duty.

In conclusion, contrary to the findings of the Superior Court, the plain meaning of the County Pension Provision as enacted in 1955, when read in conjunction with the State Retirement System Act as it existed at that time, shows that the Legislature intended to extend county pension benefits to the survivors of sheriffs and deputy sheriffs, such as Davey, who were employed at regular salaries. The only remaining question is whether Davey's widow also has any rights against the State Retirement System.

### III. *Liability of the State Retirement System*

■ Davey's widow and the County contend on appeal that the State Retirement System is liable for her pension under the State Retirement Provision, 5 M.R.S.A. § 1121(7), even though Davey was not a member of the System at the time of his death. That Provision does not specify whether it applies to Retirement System members only; instead it begins, "If *a* sheriff or deputy sheriff shall die...." (Emphasis added) At the time Davey died the Retirement System Act provided that when any member withdrew his contributions he would cease to be a member. 5 M.R.S.A. § 1091(6) (1979). The same was true when the State Retirement Provision was originally enacted in 1955. R.S. ch. 64, § 3(VI) (1954). Although there is no question that Davey was not a member of the State Retirement System on the date of his death,[7] his widow and Lincoln County argue that the 1955 Legislature intended to provide a pension to the dependents of *all* sheriffs and deputy sheriffs killed in the line of duty, regardless of membership in the State Retirement System. The Superior Court found that in simultaneously enacting the State Retirement Provision and the County Pension Provision, the 1955 Legislature intended to allocate the burden of paying the pensions between the respective governmental entities on the basis of which was most capable of bearing it; in other words, that the counties, with their lesser financial resources were to be liable *only* for death benefits for deputy sheriffs not paid at regular salaries, and the State

---

6. Those seven counties and the dates of their entry into the State Retirement System are as follows: Cumberland, 1944; Penobscot, 1945; Knox, 1949; York, 1949; Washington, 1950; Kennebec, 1951; and Waldo, 1951.

7. As an official appointed for a fixed term, Davey had exercised his statutory right to opt out of the State Retirement System. 5 M.R.S.A. § 1091(1) (1979).

Retirement System, with its greater resources, was to be liable for death benefits for sheriffs and deputy sheriffs paid at regular salaries, whether or not members of that System. We disagree with this reading of the legislative intent.

First, at the time the State Retirement Provision for sheriffs and deputy sheriffs was enacted, the Retirement System Act declared that the general intent of the Legislature was to extend benefits to members (and presumably only members) of the System. At that time, R.S. ch. 64, § 22 (1954) stated: "It is the intent and meaning of this chapter that all rights, credits and privileges enumerated herein shall be available to and shared in by all *members* of the system whether employees of the state or local participating districts...." (Emphasis added) Based on this declared intent, the 1955 Legislature would certainly have been more explicit had it intended to allow the dependents of *nonmember* sheriffs and deputy sheriffs the right to receive pension benefits out of the funds of the State Retirement System.

Second, as far as we can find, there exists only one section in the history of the Retirement System Act that explicitly provides benefits for *nonmembers*. The same 1955 Legislature, shortly after enacting the parallel State and County Provisions for sheriffs and deputy sheriffs killed in the line of duty, revised the Retirement System Act and enacted P.L.1955, ch. 417, § 10(II).[8] That section provided:

> If a member of the state police who is *not a member* of the retirement system shall die as the result of injury received in line of duty, his widow, or, if none, his child or children under age 18, jointly, shall receive an annual sum equal to ½ the annual salary of such officer at the time of his death; *such payments shall*

*be made from the appropriation of the state police.*

(Emphasis added) Unlike the State Retirement Provision, with which we are here concerned, section 10(II) specifically refers to *nonmembers* and at the same time states the *source of funding* for the payment of death benefits—"the appropriation of the state police." We find it highly unlikely that the 1955 Legislature would intend to allow nonmember sheriffs and deputy sheriffs killed in the line of duty to derive survivor pension benefits from the State Retirement System without explicitly so stating and without providing for a specific source of funding aside from the membership contributions to the System.

The last point further supports our construction of the County Pension Provision. That Provision provides for a specific source for the pension benefits payments:

> The county commissioners of each county are authorized and directed to pay such pensions from county funds.

Plainly, it is more logical that the 1955 Legislature intended to place the burden of paying the pension benefits on account of nonmembers of the State Retirement System on the county where the Legislature has provided a specific source of funding, rather than to place the burden on the contributions of the members of the State Retirement System.

### IV. *Conclusion*

From the foregoing analysis, the overall intent of the 1955 Legislature in enacting the double-barrelled chapter 362, providing survivor pension benefits for sheriffs and deputy sheriffs, becomes evident. When and if the sheriff or deputy killed in line of duty was a member of the State Retirement System, the Legislature provided his survivors with a pension from that System, funded by membership contributions.[9]

---

**8.** P.L.1955, ch. 417, § 10(II) had become 5 M.R.S.A. § 1125(2) (1979) by the time of Mr. Davey's death. It was subsequently repealed by P.L. 1985, ch. 38, § 2.

**9.** If the deceased officer was a member of the State Retirement System, his survivors could not recover double benefits from both that system and the county employing him. Such double recovery would burden the county twice, once through its contributions to the State Retirement Fund and again through the directly paid county pension. Furthermore, double re-

When and if he was not a member of the State Retirement System, the Legislature still guaranteed his survivors a pension—in that event to be paid out of county funds by the county employing him. The Legislature at the same time made clear that the county-paid pension was available to the survivors of deceased deputies who were paid by fees rather than a regular salary and therefore could not be State Retirement System members.

That intent of the 1955 Legislature remained unchanged until after Davey was killed in the line of duty. As a result, Lincoln County is responsible for paying his widow pension benefits pursuant to the County Pension Provision, 30 M.R.S.A. § 851. Since he was not a member of the State Retirement System, his widow has no claim to benefits under the State Retirement System, 5 M.R.S.A. § 1121(7).

The entry is:

Judgment of the Superior Court vacated.

Remanded with instructions to enter judgment affirming the decision of the Board of Trustees of the Maine State Retirement System, and to enter judgment modifying the decision of the county commissioners of Lincoln County to provide payment of benefits to the widow of Donald Davey pursuant to 30 M.R.S.A. § 851 (1978).

All concurring.

covery would conflict with the intent of the Legislature as seen throughout the Retirement System Act to provide only a portion of the decedent's salary as a death benefit to his survivors. The Legislature is presumed not to intend an absurd result, and we will construe statutes "to avoid, if possible, inconsistency, contradiction and illogicality." *State v. Rand,* 430 A.2d 808, 817 (Me.1981).