STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss                                      CIVIL ACTION
                                              DOCKET NO. CV-18-008


MAINE SCHOOL ADMINISTRATIVE
DISTRICT NO. 6,

         Plaintiff
                                                      ORDER
v.

RECD CUMB CLERKS OFC
APR 30 '19 PM 1:34

INHABITANTS OF THE TOWN OF
FRYE ISLAND,

         Defendant


Before the court are cross motions for summary judgment by defendant Town of Frye

Island and plaintiff Maine School Administrative District No. 6. Intervenors James Hodge and Ed

Rogers join in Frye Island's motions.[1]

As the court has previously noted, this case involves the latest chapter of a two decades-

long dispute relating to Frye Island's attempt to withdraw from MSAD 6. This dispute was

previously the subject of litigation a decade ago. *See Town of Frye Island v. State*, 2008 ME 27,

940 A.2d 1065.

The background to this action, as set forth in the Law Court's 2008 decision, is that Frye

Island is a summer community that shuts down from November through April every year. 2008

ME 27 ¶ 2. Although a member of MSAD 6, Frye Island has no school age children who reside on

the island during the school year and no residents of the island have ever attended MSAD 6

---

[1] Frye Island originally filed a motion for summary judgment on counts 1 of its counterclaim. MSAD 6
then filed a cross-motion for summary judgment on the two counts in the complaint and on all three
counts in Frye Island's counterclaim. In response Frye Island then moved for summary judgment on both
counts in the complaint and on the remaining counts in its counterclaim.

Plaintiff-Melissa Hewey, Esq.
Defendant and Intervenors-Eric Wycoff, Esq.

schools. *Id.* As a result, Frye Island is seeking to be relieved from contributing to MSAD 6's finances.

Factual and Statutory Background

The facts, as derived from Frye Island's uncontroverted statement of material facts and from the relevant statutes, are undisputed.[2]

Prior to 1997 Frye Island was part of the Town of Standish. In 1997 Frye Island sought to secede from Standish and become an independent municipality. A memorandum of understanding was reached between Frye Island and Standish in which Standish agreed to remain neutral regarding proposed legislation allowing Frye Island to secede so long as, among other conditions, Frye Island remained part of MSAD 6 and continued to contribute to its support. The memorandum provided that the bill of secession adequately addressed this condition. See Frye Island SMF ¶¶ 1-2; Exhibit A to Braun affidavit; 2008 ME 27 ¶ 3.

The Legislature thereafter enacted the bill of secession as private and special legislation. P. & S. L. 1997, ch. 41 ("Secession Law"). That statute included a provision that Frye Island "remains in School Administrative District 6 or its successor and pays its proportional share of costs, unless or until such time as it withdraws from the school administrative district in accordance with applicable state law." *Id.* § A-8.

Secession was approved by a majority of Frye Island voters and took effect on July 1, 1998. Frye Island SMF ¶ 3;  P & S. L. 1997, ch. 41 § A-3.

---

[2] Both parties have also referred to legislative history, which is a matter of law that can be considered by the court and does not have to be set forth in a statement of material fact. *Wawenock LLC v. Department of Transportation,* 2018 ME 83 ¶ 13 n.7, 187 A.3d 609.

Thereafter Frye Island adopted a charter effective January 1, 1999 which created and defined its municipal government. Frye Island SMF ¶ 12. Article IV of the charter contained language consistent with section A-8 of the Secession Law, stating that Frye Island would remain in MSAD 6 and pay its proportional share of the costs "unless or until such time as it withdraws from the school administrative district in accordance with applicable state law." Frye Island SMF ¶ 16; Exhibit B to Braun Affidavit.

In 2000 Frye Island residents voted unanimously to withdraw from MSAD 6 pursuant to the provisions of then-existing 20-A M.R.S. § 1405. Frye Island SMF ¶ 17.

In response, the Legislature passed, as emergency legislation, "An Act to Clarify the Act of Separation of Frye Island from the Town of Standish." P & S.L. 2001, ch. 8, alternatively referred to as L.D. 500. *See Town of Frye Island v. State,* 2008 ME 27 ¶ 6.

L.D. 500 amended P.& S.L. 1997, ch. 41 § A-8 by restating that Frye Island would remain in MSAD 6 and pay its proportional share of costs and deleting the words "unless or until such time as it withdraws from the school administrative district in accordance with applicable state law." It further amended P.& S.L. 1997, ch. 41 by adding the following provision:

> **Authorization required.** Notwithstanding any withdrawal proceedings initiated or completed pursuant to the Maine Revised Statutes, Title 20-A, section 1405 prior to the effective date of this section, or any subsequent action taken by the Town of Frye Island, the Town of Frye Island is a part of and may not withdraw from School Administrative District 6 or its successor unless such withdrawal is first authorized by further amendment to this chapter.

P & S.L. 2001, ch. 8 § 2.

In 2004 the Legislature established a new formula for allocating the cost of education between municipalities according to the percentage of students from each municipality. Under this formula Frye Island's contribution to MSAD 6 would have been reduced to zero. 2008 ME 27 ¶

7. In early 2005, however, as part of legislation addressing education financing the Legislature enacted a provision expressly exempting municipalities in MSAD 6 and MSAD 44 from the new cost allocation formula. P.L. 2005 ch. 2, § D-69.

In 2005 Frye Island filed a lawsuit challenging the constitutionality of both L. D. 500 and the legislation exempting MSAD 6 from the new cost allocation formula. The Superior Court (Delahanty, J.) decided the case on an agreed statement of facts and rejected the various constitutional challenges raised by Frye Island. *Town of Frye Island v. State,* No. CV-05-712, 2007 Me. Super. LEXIS 124 (June 28, 2007) .

Frye Island appealed. Because the statute addressing withdrawal from school districts, 20-A M.R.S. § 1405, had been repealed in the meantime, the Law Court decided that Frye Island's constitutional challenges to L.D. 500 were moot. At the same time it affirmed the decision below in rejecting Frye Island's constitutional challenges to the statutory exemption of MSAD 6 from the new formula for educational cost allocation. *Town of Frye Island v. State,* 2007 ME 27 ¶¶ 11-12, 13-17 & n.4.

In 2009 the Legislature enacted a new statutory process for municipalities to withdraw from school administrative districts. P.L. 2009, ch. 590 § 9, codified at 20-A M.R.S. § 1466.

In October 2017 the residents of Frye Island voted in favor of filing a petition for Frye Island's withdrawal from MSAD 6 pursuant to 20-A M.R.S. § 1466. Frye Island SMF ¶ 17. In January 2018 the municipal officers of Frye Island ordered a special election on a proposed amendment to Article IV of Frye Island's charter. Frye Island SMF ¶ 22. That amendment passed on February 24, 2018. Frye Island SMF ¶¶ 28-19.

As amended on February 24, 2018, Frye Island's charter now reads in pertinent part:

> **Preamble to Article IV.** This Article addresses the circumstances
> of Frye Island's students. It is impractical to send those students to

4

the school district of which Frye Island is currently a member, School Administrative District 6 (SAD 06), based on SAD 06's distance and location compared to more geographically feasible school districts. Frye Island shall consider its best options with respect to its prospective students and its taxpayers, while acknowledging its commitment to public education in Maine. Therefore, Article IV clarifies, to the extent there is any debate, that this Charter repeals P. & S.L. 2001, ch. 8 (L.D. 500) under the authority granted to Frye Island by the Maine Constitution and the general laws of Maine.

**Section 1. General.** Frye Island remains a member of SAD 06 or its successor and pays its proportional share of costs, unless and until it withdraws from the school administrative district in accordance with the withdrawal procedures codified in Maine Revised Statutes, Title 20-A, section 1466, or other general laws of Maine. In the event that the Town of Frye Island is required to operate its own school system, the Voters shall provide, by Charter amendment or revision and/or ordinance, for the administration of such a system.

Frye Island SMF ¶ 30; Exhibit N to Braun Affidavit.

## Effect of 30-A M.R.S. § 2107

The major issue in this case centers on whether L.D. 500's limitation on Frye Island's ability to withdraw from MSAD 6 remains applicable or whether by operation of law that limitation is no longer in effect. Specifically, Frye Island argues that pursuant to 30-A M.R.S. § 2107, Frye Island's charter has supplanted any limitations contained in P. & S. L. 1997, ch. 41 as amended by L.D. 500.

30-A M.R.S. § 2107, which is contained in a chapter designed to implement the Home Rule powers set forth in Art. VIII, Pt. 2 of the Maine Constitution,[3] provides as follows:

> Private and special laws applying to a municipality remain in effect until repealed or amended by a charter revision, adoption, modification or amendment under this chapter.

---

[3] *See* 30-A M.R.S. § 2101.

Frye Island argues that pursuant to section 2107, L.D. 500 is no longer in effect after its February 2018 charter amendment, which expressly states that it is intended to repeal L.D. 500 and authorize Frye Island to withdraw from MSAD 6 pursuant to 20-A M.R.S. § 1466.

Frye Island notes that the legislative history indicates that one of the purposes of the Home Rule provisions was to avoid the frequent need for legislative approval of every proposed municipal charter revision. See Frye Island's September 14, 2018 motion for summary judgment at 9-10. It argues that in *City of Lewiston v. Lewiston Educational Directors*, 503 A.2d 210, 212 (Me. 1985), the Law Court suggested that the adoption of a city charter triggers the repeal of the preceding private and special law.[4] Accordingly, as Frye Island acknowledges, the logical implication of its interpretation of 30-A M.R.S. § 2107 is that the Secession Law, P. & S. L. 1997, ch. 41, no longer remained in effect once Frye Island's original charter passed in 1998 and became effective on January 1, 1999. This would mean that L.D. 500 was an amendment to a private and special law that was no longer in effect and therefore, according to Frye Island, was a "nullity" from its inception. *See* Frye Island Motion for Summary Judgment dated September 14, 2018 at 15 n.11.

If this argument is correct, it would appear that Frye Island spent considerable resources in 2004-07 challenging the constitutionality of a legal nullity. MSAD 6 also points out that since the enactment of 20-A M.R.S. § 1466 in 2009 Frye Island has also supported several bills introduced in the Legislature to allow it to withdraw from MSAD 6 – all of which were defeated but all of which would have been unnecessary if L.D. 500 were a nullity.

Be that as it may, Frye Island's argument is not necessarily wrong just because Frye Island has belatedly recognized the existence of 30-A M.R.S. § 2107. The question before the court is

---

[4] The *City of Lewiston* case was decided under a predecessor statute, 30 M.R.S. § 1918 (1978), which contained language almost identical to the current 30-A M.R.S. § 2107.

whether section 2107, enacted in 1987, nullifies the Legislature's subsequent express command when it passed L.D. 500 in 2001 that "notwithstanding any subsequent action taken by the Town of Frye Island, the Town of Frye Island . . . may not withdraw from School Administrative District 6 or its successor unless such withdrawal is first authorized by further amendment to this chapter" (emphasis added). Frye Island's 2018 charter amendment is in direct contravention of L.D. 500.

Although the issue is not free from doubt, the court concludes that L.D. 500 remains a bar to Frye Island's withdrawal for the following reasons. First, the Legislature is presumed to have been aware of existing law, including the existence of 30-A M.R.S. § 2107 and the Law Court's interpretation of that statute in the *City of Lewiston* decision, when it enacted L.D. 500 in 2001. The court should avoid statutory interpretation that would lead to the illogical result that a legislative enactment specifically intended to prevent Frye Island's withdrawal was a legal nullity. *See, e.g., Central Maine Power Co. v. Devereux Marine Inc.,* 2013 ME 37 ¶ 8, 68 A.3d 1262 (statutes are to be interpreted to avoid illogical or inconsistent results).

The presumption that "the Legislature did not intend inconsistent results" means that a court "can even ignore the literal meaning [of statutory language] if that meaning thwarts the clear legislative objective." *Doe v. Regional School Unit 26,* 2014 ME 11 ¶¶ 14-15, 86 A.3d 600. Moreover, no portion of a statute should be treated as surplusage if a reasonable construction giving effect to the language is possible. *Watts v. Watts,* 2003 ME 36 ¶ 8, 818 A.2d 1031. It follows that a legislative enactment that is clear on its face should not be treated as either surplusage or a worthless gesture.

Thus, "when it is clear that the Legislature enacted specific legislation to remedy an existing special problem," the statute must be construed to promote the legislative intent. *Davey*

7

*v. Lincoln County,* 505 A.2d 818, 820 (Me. 1986). In this case that means that L.D. 500 should be given effect if it is possible to do so.

That principle yields if the legislation in question violates the constitution, and Frye Island has suggested that L.D. 500 intrudes upon its rights under the Home Rule provision of the Maine Constitution, Me. Const. Art. VIII, Part Second, § 1. The court has already ruled against this argument.[5] The Home Rule provision provides that municipalities "shall have the power to alter and amend their charters on all matters, not prohibited by the Constitution or general law, <u>which are local and municipal in character</u>" (emphasis added).

In *Town of Frye Island v. State,* 2008 ME 27 ¶ 17, the Law Court found that the 2005 statute exempting Frye Island from the newly instituted cost allocation formula, P.L. 2005 ch. 2, § D-69, was instituted pursuant to the Legislature's constitutional authority and duty under Me. Const. Art. VIII, Part First § 1, to provide for the financing of public education. In fact, Article VIII, Part First § 1 expressly authorizes and directs the Legislature to "<u>require</u> the several towns to make suitable provision, at their own expense, for the support and maintenance of public schools" (emphasis added).

Like the 2005 exemption from the cost allocation formula, L.D. 500 falls within the Legislature's constitutional authority to require towns to support public education. As a result, Frye Island's charter amendment – designed to allow it to escape from its financing obligation – involves a school financing issue that is not within the Town's home rule authority on matters "which are local and municipal in character."

The above analysis informs the interpretation of 30-A M.R.S. § 2107. That statute provides that private and special laws "<u>applying to a municipality</u>" may be repealed or amended by a charter

---

[5] June 26, 2018 order at 3.

revision or adoption (emphasis added). However, the authority of Frye Island to withdraw from MSAD 6 does not apply solely to Frye Island but also applies to MSAD 6 – and significantly affects the Town of Standish and the other towns in MSAD 6. To construe section 2107 harmoniously with L.D. 500 and with P.L. 2005 ch. 2, § D-69, 30-A M.R.S. § 2107 should not be interpreted to allow Frye Island's charter to amend or repeal statutory provisions that are not limited in their application to Frye Island.[6]

As MSAD 6 points out, interpreting section 2107 to allow Frye Island to repeal all aspects of P. & S. L. 1997, ch. 41, regardless of their effect on other political entities, would mean that Frye Island could pass a charter amendment disclaiming its obligation to bear "its just and due proportion of the bonded indebtedness of the Town of Standish" as set forth in § A-6(4) of P. & S.L. 1997, ch. 41. Other towns that have seceded could also unilaterally eliminate or modify the allocation of debts and assets established in the private and special laws governing their secession.[7]

Finally, while Frye Island relies on the Law Court's decision in *City of Lewiston v. Lewiston Educational Directors,* that case involved a provision in the city charter requiring city council approval of certain collective bargaining agreements – a provision which the Law Court described as carrying forward the same requirement that had existed under the private and special law that constituted the original legislative charter. 503 A.2d at 211. That provision, unlike L.D. 500, applied exclusively to the city. *City of Lewiston* is therefore distinguishable.

---

[6] Frye Island argues that the literal meaning of "applying to a municipality" would include any provisions that apply to Frye Island even if they also applied to another political entity. This, however, disregards the precept that the court can disregard the literal meaning of a phrase if that meaning thwarts the clear legislative objective. *Doe v. Regional School Unit 26,* 2014 ME 11 ¶ 15.

[7] By way of example, MSAD 6 posits that the Town of Long Island could alter the provisions concerning the allocation of debts and assets between Long Island and the City of Portland in P. & S.L. 1991, ch. 100 § A-6, and the Town of Chebeague Island could alter various obligations in P. & S.L. 2005, ch. 47 including its 50-year obligation to pay the Town of Cumberland 50% of certain property taxes.

In addition, the *City of Lewiston* decision ultimately held that the city's charter provision yielded to the Legislature's authority to enact statutes governing public education. 503 A.2d at 213. In this case the court concludes that Frye Island's 1998 charter and its 2018 charter amendment similarly yield to the Legislature's authority to provide for the support of public education by limiting Frye Island's ability to withdraw from MSAD.

Implicit Repeal

Frye Island argues in the alternative that the Legislature's enactment of 20-A M.R.S. § 1466 in 2009 constituted an implicit repeal of L.D. 500. Implicit repeal can be found when a later enactment is inconsistent with or repugnant to an earlier statute, but implicit repeal is disfavored and will not be found when statutes may be read in harmony. *Fleet National Bank v. Liberty*, 2004 ME 36 ¶ 9, 845 A.2d 1183.

The problem with Frye Island's argument is the fundamental principle of statutory construction that specific statutes prevail over general ones when the two are inconsistent. *See, e.g., Houlton Water Co. v. Public Utilities Commission*, 2016 ME 168 ¶ 21, 150 A.3d 1284. In its *City of Lewiston* opinion the Law Court noted that it had previously held that private and special laws control over general laws enacted before or after the special laws. 503 A.2d at 212 n.2, citing *State v. Donovan*, 89 Me. 448, 452, 36 A. 982 (1897).

In this case L.D. 500 states that "the Town of Frye Island . . . may not withdraw from School Administrative District 6 or its successor unless such withdrawal is first authorized by further amendment to this chapter." That provision creates a specific exception from the general withdrawal statute and the two statutes can therefore be harmonized. L.D. 500 has not been implicitly repealed.

10

Special Legislation Clause

The remaining claim asserted by Frye Island is that L.D. 500 violates the special legislation clause of the clause of the Maine Constitution, which provides:

> The Legislature shall, from time to time, provide, as far as practicable, by general laws, for all matters appertaining to special or private legislation.

Me. Const. Art. IV, pt. 3, § 13.

The Special Legislation Clause may be violated when special legislation is enacted when a general law could have been made applicable. *Brann v. State*, 424 A.2d 699, 704 (Me. 1981). Specifically, laws that attempt to "exempt one individual from generally applicable requirements of the law" have been found to violate this clause. *Id.*

All of the cases cited by Frye Island involve legislative exemptions for individuals, not for municipalities. Special legislation favoring or disfavoring individuals runs the particular risk of "privilege, favoritism, and monopoly" that the special legislation clause guards against. *Brann v. State*, 424 A.2d at 704. *See Nadeau v. State*, 395 A.2d 107, 112-14 (Me. 1978). However, special legislation has been upheld when the Legislature could legitimately conclude that the only practical way of addressing particular issues was on a case-by-case basis. *See Brann v. State*, 414 A.2d at 705. Given the unique issues posed by different municipalities, the Legislature has traditionally addressed legislation applicable to individual municipalities through private and special laws. Frye Island in particular presents a unique municipal situation requiring special legislation.

So long as the use of special legislation does not result in a violation of equal protection, the Law Court has afforded some level of deference to a legislative decision that general legislation

11

is not practicable. *Brann v. State*, 424 A.2d at 704 ("It is appropriate for the legislature rather than the court to make the policy decision regarding what is practicable in a given situation").

In this case the court has already ruled that Frye Island cannot assert an equal protection claim. June 26, 2018 order at 2. Even assuming the contrary, the Law Court's 2008 decision in *Town of Frye Island v. State,* which rejected an equal protection challenge to P.L. 2005 ch. 2, § D-69, supports a finding that L.D. 500 is also rationally related to a legitimate state interest and would survive scrutiny under the equal protection clause. 2008 ME 27 ¶ 17.

Accordingly, the question before the court is whether the Legislature could legitimately conclude that it was not practicable to address the specific circumstances presented by Frye Island's secession from Standish and its subsequent relationship with MSAD 6 through general legislation. Having originally provided in special legislation, P. & S.L. 1997, ch. 41, that Frye Island would remain in MSAD 6 and pay its proportional share of the costs unless and until it withdrew, it was only practicable for the Legislature to withdraw that authority by amending the P. & S.L. 1997, ch. 41.

In considering challenges under the special legislation clause, the Law Court has emphasized the presumption that legislative acts are constitutional. *Brann v. State,* 424 A.2d at 705; *Nadeau v. State,* 395 A.2d at 111. Given the time-honored practice of addressing issues relating to municipal government through private and special laws, no violation of the special legislation clause can be found in this case.


The entry shall be:

1. Defendant Town of Frye Island's September 14, 2018 motion for summary judgment and its November 2, 2018 cross-motion for summary judgment are denied.

12

2. The motion by plaintiff Maine School Administrative District No. 6 for summary judgment on both counts in the complaint and on all counts in the counterclaim is granted.

3. The court grants plaintiff's request for judgment declaring that the Town of Frye Island is not authorized to withdraw from MSAD 6 pursuant to 20-A M.R.S. § 1466 in the absence of legislation specifically authorizing the Town of Frye Island to invoke the withdrawal process.

4. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: April 30, 2019

Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 4/30/19

MC ✓

13

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-18-008

MAINE SCHOOL ADMINISTRATIVE
DISTRICT NO. 6,

Plaintiff

v.

INHABITANTS OF THE TOWN OF
FRYE ISLAND,

Defendant

ORDER

STATE OF MAINE
Cumberland. ss. Clerk's Office

JUN 26 2018
10:41 PM
RECEIVED

Before the court are two interrelated motions: (1) a motion by three residents of Frye Island to intervene as defendants and counterclaimants in this case[1] and (2) a motion by plaintiff Maine School Administrative District No. 6 (MSAD 6) to dismiss count III of the counterclaim filed by defendant Inhabitants of the Town of Frye Island (Town).

This case involves the latest chapter of a two decades-long dispute relating to Frye Island's attempt to withdraw from MSAD 6. This dispute was previously the subject of litigation a decade ago. *See Town of Frye Island v. State*, 2008 ME 27, 940 A.2d 1065.

Because the court construes the motion to intervene as primarily a vehicle to raise the constitutional claims in Count III of the Town's counterclaims in the event that the Town is not found to have the right to assert those claims, the motion to dismiss will be addressed first.

---

[1] The three residents are Betsy Gleysteen, Jim Hodge, and Ed Rogers (hereafter "Intervenors") and are represented by the same counsel that represents the Town of Frye Island.

<u>Motion to Dismiss</u>

Count III of the Town's counterclaims alleges that if the 1997 statute allowing Frye Island to secede from the Town of Standish (the "Secession Act"), as amended by a clarifying statute in 2001 (the "Clarifying Act"),[2] is interpreted to prohibit Frye Island from withdrawing from MSAD 6, it will violate the equal protection and due process rights of Frye Island and its residents under the U.S. and Maine Constitutions, the Special and Emergency Legislation clauses of the Maine Constitution, the right of Frye Island and its residents to petition for redress of grievances under the Maine Constitution, the right of Frye Island and its residents to equal taxation under the Maine Constitution, and the contract clause of the Maine Constitution.

As an initial matter, the Town does not offer any authority – and the court is aware of none – for the proposition that it has standing to assert the constitutional rights of its residents.[3] The remaining question is whether the claims in Count III of the Town's counterclaim can be asserted by the Town in its own right.

The court concludes that, with one exception, the Town does not have the right to assert any of the claims in Count III of the counterclaim. *Town of Frye Island v. State,* 2008 ME 27 ¶ 11 n.3, citing *Williams v. Mayor and City Council of Baltimore,* 289 U.S. 36, 40 (1933); *South Portland v. State,* 476 A.2d 690, 693 (Me. 1984). The exception is Frye Island's claim under the

---

[2] The legislation allowing Frye Island to secede from Standish is P. & S. L. 1997, ch. 41. The Act to clarify that legislation is P. & S. L. 2001, ch. 8, also referred to as L.D 500. *See Town of Frye Island v. State* 2008 ME 27 ¶¶ 4, 6.

[3] Although MSAD 6 named the "Inhabitants of the Town of Frye Island" as the defendant, this does not give the Town standing to assert rights that are personal to its residents. The Law Court has described naming a town by its inhabitants as a "hoary practice" and has ruled that where "Inhabitants of a Town" are named, this refers to the municipal body corporate. *Boothbay Harbor v. Russell,* 410 A.2d 554, 557 n.3 (1980).

2

Special Legislation clause of the Maine Constitution, in which Frye Island claims that the Secession Act as amended improperly exempts one municipality from generally applicable law.

The Town cites a number of U.S. Supreme Court decisions that it contends supports its right to assert the claims in count III, but all are distinguishable.[4] The Town also cites to the Home Rule provision of the Maine Constitution and notes that the Emergency Legislation clause of the Maine Constitution specifically bars emergency legislation from infringing the home rule rights of municipalities. Me. Const. Art. 4, Part 3, § 16(1). The problem with this argument is that, regardless of its other alleged infirmities, the Secession Act as amended does not intrude on any Home Rule rights that the Town may have.

Accordingly MSAD 6's motion to dismiss count III of the Town's counterclaims is granted with the exception of the claim set forth in paragraph 62(C) of the counterclaims.[5]

Motion to Intervene

As noted above, the motion to intervene is a vehicle to raise constitutional claims that the Town is unable to raise on its own behalf.

At the outset, except for those claims which the Town does not have any right to raise, the motion to intervene under Rule 24(a) (Intervention of Right) is denied because that rule expressly does not allow intervention when a proposed intervenor's interest "is adequately represented by

---

[4] In a number of those cases, municipalities or municipal agencies were joined by individual plaintiffs who had an unquestioned right to assert the claims. As a result, there was no occasion to address the rights of the municipalities. In the remaining cases the municipal plaintiffs were either contesting state interference with municipal regulations or were being directed by state legislation to take action which they contended was unconstitutional. Neither of the latter two situations are presented in this case.

[5] Little need be said about the Town's argument that MSAD 6 has waived its right to challenge Count III by answering the complaint and not raising failure to state a claim as an affirmative defense. Failure to state a claim is not an affirmative defense and can be raised at any time. M.R.Civ.P. 12(h)(2).

3

existing parties." The court cannot discern any conceivable reason why the Town, represented the same counsel (Pierce Atwood) that represents the proposed intervenors, cannot adequately represent the interests of the proposed intervenors.

With respect to the constitutional claims asserted in count III of the counterclaim, MSAD 6 argues that – in light of the dismissal of all but one of those claims – allowing the motion to intervene would interject issues into the case that would not otherwise be present. As a result, MSAD 6 argues that intervention under Rule 24(a) is not appropriate because, regardless of the outcome of this action, the proposed intervenors could bring an action on their own behalf and the disposition of this action would not as a practical matter "impair or impede [the proposed intervenors'] ability to protect [their] interest" within the meaning of Rule 24(a).

Similarly, MSAD 6 points out that under Rule 24(b) (Permissive Intervention) the claim or defense of the proposed intervenors requires a common question of law or fact. Once again, if the proposed intervenors are brought into the action to pursue claims that have been dismissed, they would not be litigating issues that have common questions of law or fact with the issues otherwise raised by the case. The proposed intervenors could assert such claims in an independent action, and while that appears to be inconvenient, the Law Court has ruled that inconvenience is not an adequate ground to support intervention. *Brown v. Zoning Board of Appeals,* 391 A.2d 348, 349 (Me. 1978).

The above objections, while technical in nature, appear to have merit. There is a metaphysical problem with allowing the proposed intervenors to intervene in order to litigate claims that have been dismissed.

Accordingly, the court will grant the motion for permissive intervention as to all of the issues except the counterclaims raised by the Town in count III that have been dismissed above.

4

This is subject to the condition that, on those issues where intervention has been allowed, the intervenors and the Town shall file joint briefs unless granted leave to file separately.

To litigate the claims in count III that have been dismissed, the Intervenors need to file an independent action along with a motion to consolidate that action with this case. If they do so, the court anticipates that it will grant that motion and direct that the existing scheduling order in this case will control both of the consolidated actions.

Rule 24(d)

Rule 24(d) provides for notification of the Attorney General in any case in which the constitutionality of a statute affecting the public interest is called into question. On their claim that the Secession Law as amended violates the especial legislation clause of the Maine Constitution, the Town has raised a constitutional issue. Moreover, if and when the Intervenors file an action to raise the claims in count III that have been dismissed, they also will be raising constitutional issues.

Accordingly, the Town and the Intervenors shall notify the Attorney General of the constitutional issues raised and shall send the Attorney General's Office copies of any pleadings raising those issues so that the State can intervene to the extent called for by Rule 24(d) if the State chooses to do so.,

The entry shall be:

1. Plaintiff MSAD No. 6's motion to dismiss count III of the Town of Frye Island's counterclaims is granted with the exception of the Town's claim under the special legislation clause of the Maine Constitution.

2. The motion of proposed intervenors Gleysteen et al. for intervention of right is denied.

3. The motion of proposed intervenors Gleysteen et al. for permissive intervention is granted except as to the claims in count III of the Town's counterclaims that have been dismissed.

5

On the claims on which intervention has been allowed, Intervenors and the Town shall file joint briefs unless granted leave to file separately.

4. The motion of proposed intervenors Gleysteen et al. for permissive intervention as to the claims in count III of the Town's counterclaims that have been dismissed is denied without prejudice to the proposed intervenors' right to file an independent action and to move to consolidate that action with this case.

5. Pursuant to Rule 24(d) Town shall notify the Attorney General of the constitutional issue it has raised under the special legislation clause. If and when the Intervenors commence a separate action to raise constitutional challenges to the Secession Act as amended, they shall; also notify the Attorney general pursuant to Rule 24(d).

6. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: June 26, 2018

Thomas D. Warren
Justice, Superior Court